### GRINAGE v. HUMPHREY, Warden.
### No. 221.

District Court, M. D. Pennsylvania.
Aug. 16, 1948.

Petitioner pro se.

Arthur A. Maguire, U. S. Atty., of Scranton, Pa., and Charles W. Kalp, Asst. U. S. Atty., of Lewisburg, Pa., for respondent.

FOLLMER, District Judge.

Petitioner, now a prisoner at United States Penitentiary, Lewisburg, Pennslyvania, seeks a writ of habeas corpus alleging under oath in his petition that:

"* * * he was coerced into entering a plea of guilty, to a crime that he never committed, (sic) coercion was or consisted of threats involving petitioner or connecting petitioner with many other crimes, having been commited (sic) in and around Wheeling, West Virginia, petitioner was not interested into entering a plea of guilty; instead petitioner wanted a trial by a jury, as cited in Article # 6, United States Code, petitioner was denied a trial by a jury when the Assistant United States Attorney, Mr. Wayne T. Brooks, and an Agent for the Federal Bureau of Investigation Department, administered said corecion (sic)

"Petitioner did not have assistance of counsel, nor have an oppertunity (sic) to consult any counsel prior to entering plea, petitioner had no one to defend him from the coercion and illegal influence exerted by aforementioned Court officials: "

Because of these allegations it was deemed advisable to hold a hearing to which was summoned, at considerable expense to the Government and loss of time to the individuals, four witnesses, an Assistant United States Attorney, a Chief of Police (a former F. B. I. Agent), a Chief Deputy Sheriff, and a city detective, all of whom were obliged to travel from West Virginia. As a result of this hearing, it is unmistakably clear that there is no merit or truth whatsoever in petitioner's allegations. This case is a glaring example of the presently too frequent abuse of the time honored writ.[1]

The record at the time of arraignment and at the time of sentence is replete with

---

[1] Setser v. Welch, 4 Cir., 159 F.2d 703; see also Goodman, "Use and Abuse of the Writ of Habeas Corpus," 7 F.R.D. 313.

evidence of Judge Baker's careful study of, interest in the case, and care to protect the rights of this defendant and his co-defendant. [2]

There is no justification for the allegation of coercion at the jail. The Assistant United States Attorney accused by him never interviewed him at the jail. This is verified by the other three witnesses who were present at the interview to which he made reference. To those three at this interview he readily admitted the theft and transportation of the car. No promises were made to him. As a matter of fact, we have been unable to find any suggestion of coercion but even assuming such to have existed prior thereto, it would have been completely neutralized by the court's treatment of the case.

An alleged alibi referred to by him at the hearing was never mentioned to any of them or to the court in spite of the full opportunity he had throughout. This is quite evidently an afterthought concocted during his subsequent incarceration. Nor would this, in any event, be a proper subject of habeas corpus.[3]

There was no denial of due process involved in the proceedings and the petition for writ of habeas corpus must be denied. The rule to show cause is dismissed.

---

[2] The Court (Respondent's Exhibit No. 1, Transcript of Court Minutes) advised them as to their right to counsel, discussed the waiver of an indictment, made sure they both had received copies of the Information to be filed, and after reading the charge in full, asked:

"Peter Robert Grinage, do you understand that?

"Mr. Grinage: Yes, sir.

   \*     \*     \*     \*     \*     \*

"The Court: Is there anything you want explained to you that you don't understand?

"Both Defendants: No, sir."

He discussed the effect of the state sentence petitioner was serving and that his sentence, when imposed, would be in the nature of a detainer until the state sentence had been served, and at this arraignment on June 24, 1947, the defendant being present, asked:

"The Court: Now, Mr. Brooks, about the sentence of these young men. Of course, we can sentence no one until we get the Probation Officer's report. If, in the interim, we have that Probation Officer's report, when we come back here do you see any objection to this young man being brought back here and sentence pronounced to start at the expiration of his term in the Moundsville jail?

"Mr. Brooks: No, sir. That would be the procedure I would suggest, Your Honor. That would leave the disposition of that sentence down there as it was originally intended when they wrote it, and the jurisdiction of this Court's sentence would take effect on the termination of that, whenever it terminated. I think that would be the proper way to do it."

At the time of sentence on July 18, 1947, the Court inquired:

"The Court: Have you anything to say why the judgment of the Court should not now be pronounced upon you, Peter Robert Grinage?

"Mr. Grinage: No, sir."

And after the defendant's history had been discussed by the Probation Officer, again asked:

"The Court: Peter Robert Grinage, have you anything to say why the judgment of the Court should not now be pronounced?

"Mr. Grinage: No, sir."

He stated to the defendants, "\* \* \* Your cases have caused me a great deal of difficulty. \* \* \*," and after discussing with the defendant various phases including the part liquor had played in this record, again inquired whether there was anything he wished to say. The Court throughout showed its solicitude, e. g., by way of illustration, "Will you promise me that when you come out, Peter, you will go straight?" "Don't you think the court has done what is best for you?" "I tell you what you do. I would like to ask you to do this for me. After you have been out at the institution for a year, will you write me a letter?"

[3] Thomson v. Huff, 80 U.S.App.D.C. 165, 149 F.2d 842; Lowrey v. Hiatt, D.C.M.D. Pa., 73 F.Supp. 8, 11.