### UNITED STATES v. LOWREY.

#### No. 12661 Cr.

United States District Court
W. D. Pennsylvania.

July 15, 1949.

Owen M. Burns, United States Attorney, Edward C. Boyle, Assistant United States Attorney, Pittsburgh, Pa., for plaintiff.

Albert B. DeSalardi, Wilkinsburg, Pa., for defendant.

FOLLMER, District Judge.

James Edgar Lowrey was convicted in this Court of violating the National Motor Vehicle Theft Act, 18 U.S.C.A. § 408 [now §§ 2311–2313], and his motion for a new trial was denied. 77 F.Supp. 301. He appealed and indicated in his appeal that he had after discovered evidence. The decision of this Court was affirmed by the Court of Appeals.[1] In its opinion of affirmance the Court suggested the defendant be afforded an opportunity to address a motion to this Court for leave to produce said after discovered evidence pursuant to Rule 33 of the Federal Rules of Criminal Procedure, 18 U.S.C.A.[2]

The matter is now before the Court on motion and supplemental motion to vacate judgment (pursuant to 28 U.S.C.A. § 2255) or grant a new trial (pursuant to Rule 33 of the Federal Rules of Criminal Procedure).

Petitioner predicated his claim for vacation of his judgment of conviction on a great variety of reasons, most of which are moot because of the affirmance by the Court of Appeals of the decision of this Court in refusing defendant's motion for a new trial. He does allege however:

(1) Counsel appointed by the Court to represent him did not have time to adequately prepare for trial.

(2) That he, the defendant, was incompetent to waive his right to a postponement of his trial because he was not informed by the Court or his counsel of his right to such postponement.

(3) Court erred in not excluding confession which had been obtained by circumstances amounting to duress.

(4) Court erred in not calling to the attention of the jury the contradiction in the testimony of Government witnesses Bronzie and Hehr, the former stating that the license number of the subject automobile was 1X29Z, while the latter gave the number as IX29Y.

(5) Double jeopardy.

In the opinion of this Court, 77 F.Supp. 301, denying defendant's motion for a new trial, the Court specifically passed, inter alia, upon the following grounds on which defendant predicated the first motion above referred to:

(1) Double jeopardy.

(2) Did not have counsel of his own choosing.

(3) Counsel did not have time to prepare case.

(4) Government witnesses were prejudiced and gave false testimony.

As above stated, the views of this Court on the matters above referred to were affirmed by the Court of Appeals and need no further elaboration here.

---

[1] United States v. Lowrey, 3 Cir., 172 F.2d 226.

[2] The procedure as outlined in United States v. Johnson, 327 U.S. 106, 66 S. Ct. 464, 90 L.Ed. 562, has been followed. The Supreme Court's comment on the delay in enforcement of the sentence is also pertinent here since defendant, although fully advised of the possible consequences, has persistently elected not to serve the sentence.

As to the competency of counsel and his state of preparation, a further word might be added. On the hearing of that motion there was introduced in evidence, with the consent of the defendant and his attorney, and with the same force and effect as though he were personally present and testifying, affidavit of Gerald J. Weber, Esq., the attorney who represented defendant in his trial at Erie. The colloquy between the Court and the defendant, together with the affidavit, appear in a footnote hereto.[3] Furthermore, there is no merit to his contention relative to the discrepancy of the testimony concerning the license plates of the automobile. The car was properly identified and the jury so found.

The opinion of this Court above referred to probably contains the best answers to defendant's complaint that he was not advised by the Court or his counsel of his right to a postponement. Prior to the calling of the case for trial at Erie, defendant was granted at least three continuances for various reasons, i. e., no counsel, at request of counsel, and in connection with the transfer from West Virginia to Pennsylvania. As indicated in the former opinion, before arraignment, upon inquiry by the Court, he indicated his satisfaction with his appointed counsel and made no request

[3] Excerpt from Transcript of Testimony (Hearing held April 19–25, 1949, at Pittsburgh, Pa.) at Pages 18 and 19.

"By the Court:

"Q. Mr. Lowrey, you have heard me ask your attorney as to whether or not you are agreed that Mr. Weber's affidavit should be admitted in evidence with the same force and effect as though he were personally present— A. I did.

"Q. —testifying, or his deposition offered? A. I did.

"Q. You also agree that the reference in his affidavit to Thomas Edgar Lowrey is a misprint and may be understood to refer to James Edgar Lowrey? A. Yes, sir.

"The Court: All right. Now you may proceed."

Affidavit of Gerald J. Weber, Esq.

"I am Gerald J. Weber, an Attorney at Law, admitted to practice law in Pennsylvania in 1940, maintaining offices at 802 Palace Hardware Building, Erie, Pennsylvania.

"My best recollection of the circumstances surrounding the trial of Thomas Edgar Lowery in the U. S. District Court for the Western District of Pennsylvania, at Erie, on March 15 and 16, 1948, are as follows:

"I was called to the chamber of Judge Wallace Gourley in Erie around noon of March 15, 1948, and asked if I would undertake the defense of Thomas Edgar Lowery, who was charged with transporting a stolen automobile in interstate commerce. I was told some of the background of the case and read the report of the decision of the court on Lowery's application for a writ of habeas corpus, as reported in the Federal Supplement Reporter.

"I then talked with Lowery for some time in the U. S. Marshall's office in the Court House, where he was locked up. To the best of my memory there was no special preparation required for the trial beyond getting Lowery's story. The only witness that he required was his brother, who was being called as a witness for the prosecution, and whose testimony was not favorable to the defendant.

"Lowery informed me at that time that a confession had been obtained from him by the police in West Virginia by coercion. At the time this confession was introduced I cross-examined the police officer as to the circumstances under which it was taken. From his testimony there appeared nothing improper, to the best of my present recollection. I also remember some comlaint (sic) from the defendant to the effect that he was not given an opportunity to secure counsel at the time of his arrest, but I believe the testimony revealed that he was in telephone contact with an attorney shortly after his arrest.

"I remember no reason for asking for a continuance at that time in order to prepare for trial. I know of nothing further that could have been done to prepare for trial. I do not remember the defendant requesting any more time. I do not remember the defendant asking for any additional witnesses in his behalf except for his brother, who was present as a witness for the prosecution.

"A jury was drawn in the presence of the defendant and he acknowledged his satisfaction with the jury as drawn. Before trial he stated in open court that he was ready to proceed at that time and that he was satisfied with the counsel provided for him. I believe that I did everything in my power and in line with my ability to present his case fairly and fully to the jury.

"/s/ Gerald J. Weber".

for continuance or for the production of witnesses. From his own wealth of experience gained in this very case he must have known without advice from his counsel or the Court, that for good and sufficient reason a continuance would have been granted. It seems to be the prerogative of an unsuccessful litigant in retrospect to point to acts of commission or omission on the part of his attorney that caused or contributed to the loss of his case. It is a criticism which the attorney, whether justified or not, is supposed to take and like. The comment of the Court in United States ex rel. Mitchell v. Thompson, D.C.S.D. N.Y., 56 F.Supp. 683, at page 688, is apropos, " * * * Unquestionably, now that the record is made, able counsel can go over every question and perhaps frame a better one, may assign better reasons for objections taken, may suggest avenues of cross-examination which did not occur to him who actually faced the court and jury. So, too, military strategists go over the movements of lost battles and demonstrate how it might have been won. The short answer to this line of argument is that the constitution does not guarantee the assistance of the most brilliant counsel." I personally heard counsel try this case and it is my considered opinion that he handled the assignment conscientiously and ably.

As to the confession: When Kennedy, the former Agent of the Federal Bureau of Investigation, was produced as a witness, counsel for defendant was asked by the Court if he desired to interrogate the witness relative to nature of witness' interview with defendant, the latter's confession, and whether or not the procedure was free of duress. He replied that he did so desire and accordingly questioned the witness at length, after which he withdrew the objection which he had interposed to this line of testimony.

The proceedings under 28 U.S.C.A. § 2255, being taken in the sentencing court in lieu of a writ of habeas corpus, the general principles applicable to habeas corpus apply. Consequently, the contention that the confession was secured under circumstances rendering it inadmissibe presents a question of admissibility of evidence which was an appropriate matter for an appeal, and hence not subject to review by habeas corpus.[4] Nevertheless, I am constrained to make this observation. The jury apparently believed, and I believe, that the defendant freely and voluntarily made his statement to the Agent within twenty-four hours after he was placed in confinement by the State officers and prior to the adoption of the case by the Federal authorities; and furthermore, that defendant's chief concern at that time was to exculpate his brother and sister-in-law of any participation in the alleged offense and to assume full responsibility therefor himself.

At the inception of the hearing on the motions presently under consideration, counsel for defendant made this statement to the Court "The newly discovered evidence consists of a letter written to me by an inmate—present inmate of the Lewisburg Penitentiary. The name of this inmate is Peter R. Grinage * * * ".[5] The letter[6] was filed with the Clerk of the Court on that day and became part of the files of the case. The Court then indicated that arrangements would immediately be made at the Penitentiary for counsel to interview Grinage and to secure his deposition

---

[4] Miller v. Hiatt, 3 Cir., 141 F.2d 690.

[5] This individual had previously appeared before me on his own application for Writ of Habeas Corpus, see Grinage v. Humphrey, D.C.M.D.Pa., 79 F.Supp. 10.

[6] Letter from Peter R. Grinage to Albert B. DeSalardi, Esq., Counsel for defendant, dated March 27, 1949 (copied as written).

"I am in receipt of your letter, concerning James edgar lowery and I am sorry to say that I can not help him at the present time for I am a prisoner of the federal government. I know edgar very well and also his brother who was involved in his case. I don't know whether you are acquainted with the methods used to obtain convictions in wheeling W. Va or not but I will advise you to investigate their procedure for I am sure it will help you in defending lowery and I will say again that, there is nothing that I can do that would help him.

"Respectfully
"/s/ Peter R. Grinage
"Pmb. 17117 Lewisburg, Pa"

or sworn statement and for that purpose continue the case. Counsel for defendant went in person to the Penitentiary and secured from him his sworn statement [7] in question and answer form as prepared and propounded by counsel for defendant. The Grinage statement discloses no new material. He states that he told defendant the substance of his conversation with Thomas Lowrey, Jr., brother of defendant, in 1946, long before the trial of his case at Erie. Secondly, the burden of his statement is in connection with his own experience as a defendant awaiting trial in the United States District Court for the District of West Virginia. The time element indicated in the statement, together with its entire content, having particularly in mind the fact that the same was taken on questions propounded in person by counsel for defendant, are not in any sense of the word after discovered evidence. Furthermore, even if it were, in view of the fact that this same Thomas Lowrey, Jr., was produced as a Government witness at the Erie trial, where he was subjected to cross-examination by counsel for defendant in the presence of defendant, renders any reference to him in the statement completely valueless.

---

[7] Affidavit of Peter R. Grinage sworn to on April 21, 1949, and filed in this proceeding on April 22, 1949.

"Before me, a Warden of a United States Penitentiary, personally appeared Peter Robert Grinage, who being duly sworn according to law deposes and says that his answers to the following questions are true and correct:

"1. Q.—When did you meet Thomas Lowrey Jr. and under what circumstances? A.—During my incarceration in the Ohio county jail at Wheeling W. Va.

"2. Q.—Did he tell you anything about a case in which he and James E. Lowrey were involved? A.—Yes—He admitted to me voluntarily, that he had stolen the car and implicated his brother because of trouble between his wife and hisself (sic).

"3. Q.—Did Thomas tell you how he got a 1940 Plymouth automobile on Sept. 29, 1946? A.—No.

"4. Q.—Did Thomas tell you who were in the car when it was driven from Greensburg, Pa., into W. Va. over the State line? A.—No.

"5. Q.—Did Thomas tell you what was the role James E. Lowrey played during this trip? A.—He told me that he had picked james up and left him at Washington Pa. and then he picked up a Soldier and they left james at his Sister's.

"6. Q.—Did Thomas tell you whether he and his wife Dorothy agreed with each other what they will tell to the authorities about James E. Lowrey? A. —Yes he told me that they had agreed to do this, and thomas's wife came to visit James after his trial. they had agreed to let james take the blame for the car for they had a reconciliation and thomas wanted to get even with james for he blamed him for stealing his wife's affections.

"7. Q.—Did Thomas tell you how he feels toward his brother, James, and why? A.—Thomas was pretty mad at James, due to wife trouble.

"8. Q.—Did you hear Dorothy, wife of Thomas, talking to James during visiting hours at Wheeling, W. Va., and if so, what was the subject matter of their conversation? A.—No.

"9. Q.—While you were under arrest, did any one interrogate you trying to take an admission of guilt from you, if so, who and when? A.—Mr. Wayne Brooks, asst. Dist. attorney (sic) When I was locked up in Marshall County jail in Moundsville W Va 1947.

"10. Q.—Did anyone try to induce you to plead guilty to any charge by using threats or promises, if so, who, where, and when, and, what where (sic) such threats or promises? A.—I was promised a year and a day if I would plead guilty on an information by the same man.

"11. Q.—Did you ever plead guilty to a charge under the influence of threats or promises? A.—Yes.

"12. Q.—If so, what was the charge and what were the threats and promises? By whom? A.—Dyer act. I answered this question above.

"13. Q.—Have you any knowledge that someone was mistreated in the jail at Wheeling, W. Va., if so, who, when and by whom? A.—I don't remember.

"14. Q.—Have you anything else to say what you know in connection with the case of James E. Lowrey? A.—No.

"15. Q.—Did you tell to James E. Lowrey what Thomas Lowrey told you? A.—Yes.

"16. Q.—When did you tell it to James? A.—1946, at the time that it happened.

"/s/ Peter R Grinage
"Deponent".

As I have indicated before, it is my opinion that this defendant had a fair trial and nothing has been produced in the nature of newly discovered evidence which would in any wise change the result.

Motion to vacate judgment in lieu of Writ of Habeas Corpus pursuant to 28 U.S.C.A. § 2255 is denied.

Motion for new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure is denied.