**McFARLAND v. UNITED STATES.**

No. 8959.

United States Court of Appeals
District of Columbia.

Argued June 12, 1945.

Decided July 2, 1945.

Mr. P. Bateman Ennis, of Washington, D. C., with whom Mr. George A. Cassidy, Jr., of Washington, D. C., was on the brief, for appellant.

Mr. Bernard Margolius, Assistant United States Attorney, of Washington, D. C., with whom Messrs. Edward M. Curran, United States Attorney, and John W. Fihelly and Charles B. Murray, Assistant United States Attorneys, all of Washington, D. C., were on the brief, for appellee.

Before MILLER, EDGERTON and ARNOLD, Associate Justices.

PER CURIAM.

Appellant was convicted of murder in the commission of rape and was sentenced to death. The evidence, which we shall not recite, clearly established his guilt. He was ably defended and his counsel have left no stone unturned on this appeal. We have carefully considered all the points which counsel raise. We find no prejudicial error.

Blood was discovered on appellant's body after the crime, by an examination to which appellant, an enlisted man, submitted under a military order. Though

the court ruled out this evidence and instructed the jury to disregard it, the jury had heard something about it and may have been unable to disregard what they had heard. However, we think the evidence was admissible. "The prohibition of compelling a man in a criminal court to be witness against himself is a prohibition of the use of physical or moral compulsion to extort communications from him, not an exclusion of his body as evidence when it may be material."[1] Out of court as well as in court, his body may be examined with or without his consent.[2]

The only other points that require discussion relate to the conduct of the prosecutor. In his opening statement to the jury he said: "The defendant in this case, Earl McFarland, who is also known as E. J. Dill and Jack Dills, is charged in this case with murder in the first degree and also with rape." This reference to aliases substantially followed the language of the indictment. To tell the jury that the defendant used different names and that he was charged "in this case" with murder and rape was to suggest to the jury, however unintentionally, that he had a criminal record. This would have been improper even if it had been accurate. But as far as appears, the defendant had no criminal record and never used different names at one time. Apparently he did have a record of juvenile delinquency, for he was in a reform school either once or twice in his boyhood. Because of that record he dropped his father's name of Dills and took his mother's maiden name of McFarland when he wished to enter the Marine Corps. These facts may explain but do not justify the statement which we have quoted and the prosecutor's later statement that the defendant "lied his way into the United States Marine Corps * * * If this defendant had ever told his true background, he could not have gotten near a Marine Corps Recruiting Station, much less into a Marine Corps uniform."

The prosecutor said in his opening statement that a young girl "who had just finished her course in high school came from Chippewa Falls, Wisconsin, to do her bit in the war effort." In his closing argument he said: "Now, even men condemned to die, they can get their last meal, but this defendant did not even give this girl a bit of food, although he said, 'What you need is a steak or a seafood dinner.'" These were "appeal[s] wholly irrelevant to any facts or issues in the case."[3]

The victim's bloodstained underclothes were not only shown to the jury but kept conspicuously displayed for several hours. Their original exhibition probably served a legitimate purpose but their continued exhibition could serve no such purpose.

It is often said and often forgotten that the duty of a prosecuting attorney is not to convict defendants but to try them fairly. Absolute fairness is a counsel of perfection. But the prosecutor should hold himself to the highest practicable standard of fairness. In this case he failed to do so. In our opinion, however, his errors do not require and would not justify a reversal of the judgment in this case. Considered in relation to the entire proceeding, it would attribute disproportionate importance to them to say that they deprived appellant of a fair trial. And they cannot have affected the result of the trial, for the evidence of appellant's guilt was so conclusive that no honest and intelligent jury could have failed to convict.

[1] Holt v. United States, 218 U.S. 245, 252–253, 31 S.Ct. 2, 54 L.Ed. 1021, 20 Ann.Cas. 1138 (Holmes, J.).

[2] Shaffer v. United States, 24 App.D. C. 417, 425; Bratcher v. United States,

[4] Cir., 149 F.2d 742, certiorari denied, 65 S.Ct. 1580; Wigmore on Evidence, 3d Ed., §§ 2263, 2265.

[3] Viereck v. United States, 318 U.S. 236, 247, 63 S.Ct. 561, 87 L.Ed. 734.