**HAYMAN v. UNITED STATES.**

No. 12297.

United States Court of Appeals Ninth Circuit.

Oct. 27, 1950.

Rehearing Denied Feb. 26, 1951.

As Amended in Succeeding Opinion of Feb. 27, 1951.

Writ of Certiorari Granted May 14, 1951.

See 71 S.Ct. 803.

Pope, Circuit Judge, dissented.

Herman Hayman, in pro. per.

Ernest A. Tolin, U. S. Atty., Norman W. Neukom, Jack E. Hildreth, Ray H. Kinnison, and Robert J. Kelleher, Asst. U. S. Attys., all of Los Angeles, Cal., for appellee.

Before DENMAN, Chief Judge, and STEPHENS and POPE, Circuit Judges.

DENMAN, Chief Judge.

This is an appeal from an order denying appellant's motion to set aside the district court's sentence of twenty years' imprisonment on findings of guilt on six counts of an indictment. The order appealed from was made in a proceeding under 28 U.S.C.A. § 2255. Appellant is confined in the federal prison at McNeil Island, Washington. His motion was filed with the clerk of the district court in Los Angeles, California.

Appellant's motion tendered three issues. One required a trial of facts dehors the record of the trial on which he was convicted. As to the other two, I am in agreement with Judge Pope's opinion disposing of them as without merit, as conclusively shown from the files and records of the case. Section 2255, par. 3.

The extended consideration of this opinion deals with two questions:

(A) Whether the motion and the proceedings thereunder show that an issue was tendered respecting the denial to the appellant of the effective assistance of counsel, in that his counsel, without appellant's knowledge and consent, was attorney for a prosecution's witness, who was convicted of a crime and waiting sentence thereon,[*] and

(B) whether the motion of Section 2255 made in a court of a district other than that in which the moving prisoner is con-

---

[*] See admission of the United States in the succeeding opinion rendered on the petition for rehearing.

fined is an "inadequate or ineffective" remedy for the proof of facts dehors the record, showing a wrong done him in his conviction for a crime in a trial in which he did not "enjoy" the effective assistance of counsel of the Sixth Amendment of the Constitution, or which has not accorded him the due process of the Fifth Amendment.

Such an extended consideration is necessary. Since under (A) it appears that such an issue was tendered and under (B) that the Section 2255 motion is inadequate and ineffective, for this court to affirm the judgment appealed from would require us to ignore the claimed infringement of a fundamental constitutional right. A reversal would return his case to a court which, as later shown, had not the power to give due process in the consideration of the issue tendered, nor the prompt consideration necessary in a proceeding in the nature of a habeas corpus. Hence dismissal is the proper remedy to free him to apply for his writ of habeas corpus.

It is not questioned that the appellant is a layman, not versed in the law here involved. Appellant did not appear and had no counsel either here or below. The question of "inadequacy and ineffectiveness" of the remedy he invoked was not appreciated by him and it was raised by this court sua sponte at the hearing before it, and there argued. Where error of a fundamental nature is concerned, this court may properly notice it even though not assigned. Sibbach v. Wilson, 312 U.S. 1, 16, 61 S.Ct. 422, 85 L.Ed. 479. This is true a fortiori in litigation involving Section 2255, an attempted substitute for a habeas corpus proceeding.

This opinion does no more than construe that statute. It does not determine its constitutionality. However, were we to hold it to violate the Constitution, it is within our power, and we should exercise it in this case involving a man's liberty. This proceeding, brought by such a layman, differs from cases involving mere property rights such as those discussed in Ashwander v. T. V. A., 297 U.S. 288, 348, 56 S.Ct. 466, 80 L.Ed. 688, where the Supreme Court, although recognizing its power to do so, refused to consider the constitutionality of a statute which had been invoked in favor of the party later challenging it.

A. *The motion properly tendered the issue that appellant was convicted in a trial in which he did not enjoy the effective assistance of counsel.*

The pertinent portion of the motion reads: "The defendant further claims that he was deprived of the right to have the assistance of counsel for his defense, in that the defendant was not adequately represented by competent counsel, to-wit: On introduction in evidence of one Juanita Jackson, codefendant statements incriminating defendant, attorney for defendant was also attorney for codefendant 'Juanita Jackson,' attorney * * * [for defendant] did not tell defendant that he was also defending Juanita Jackson, and defendant had no way of knowing until after his trial was over. Juanita Jackson, codefendant, and government witness, accused defendant of guilt, thus creating conflict of interest, is not 'qualified' to give efficient representation to any of such clients, as affecting constitutional right of qualified counsel for accused. U.S.C.A.Const. Amends. 5, 6. Johnson v. Zerbst, 304 U.S. 458, 461, 58 S.Ct 1019, 82 L.Ed. 1461, 146 A.L.R. 357. Wright v. Johnston, D.C., 77 F.Supp. 687."

The motion also sought a writ of habeas corpus to bring appellant from McNeil Island, Washington, to Los Angeles, California, for the trial.

With no more before it than the motion, the district court, following the proceeding of the third paragraph of Section 2255,[1]

1. "Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto. If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the con-

notified the United States Attorney of a hearing thereon, without advising appellant of its date or even that there was to be a hearing, and appointing no counsel to represent him. It was admitted by the government's attorney at the hearing here that the court, in an extended hearing before it, taking three trial days, received the evidence of the government witnesses who testified to the court, among them the United States Attorney and appellant's attorney. In considering the motion and taking evidence thereon, the court recognized the rule that *in such a proceeding* a layman's pleading should be liberally construed. Holiday v. Johnston, 313 U.S. 342, 350, 61 S.Ct. 1015, 85 L.Ed. 1392.

On consideration of the evidence adduced at the three-day trial, the court found that on December 9, 1946, Juanita Jackson, though not a defendant with appellant, had pleaded guilty before a different judge to violating the same statute as appellant, and was awaiting sentence thereon when appellant was tried on the succeeding January 7, 1947; that while so awaiting sentence Juanita Jackson was represented by the same attorney who represented appellant at his trial, and that the government offered her as a witness against this attorney's other client, the appellant. Appellant was found guilty on January 7, 1947, and on January 20, 1947, sentences were imposed on both Juanita Jackson and appellant.

The transcript of the trial upon which appellant was convicted was before the lower court and is before us in the appeal taken here. Hayman v. United States, 9 Cir., 163 F.2d 1018, Kelly v. Johnston, 9 Cir., 111 F.2d 613, 614; Criscuolo v. Atlas Co., 9 Cir., 84 F.2d 273, 275. It appears that the prosecution in its opening statement disclosed that it proposed to offer Juanita Jackson as a witness against appellant. Appellant's attorney thus knew before any testimony was offered that his client Juanita Jackson, so convicted and awaiting sentence, was to be a witness against his client the appellant.

The transcript further shows that in appellant's attorney's cross-examination of Juanita Jackson he failed to ask her whether she, a government witness, had been recently convicted and was awaiting sentence, and this fact was nowhere disclosed on the trial either by the prosecution or by appellant's attorney, though he was careful to do so with another woman witness for the prosecution. Appellant's attorney put appellant on the stand and his questioning brought a denial by appellant of substantially all the statements of Juanita Jackson and another woman adverse to him. In effect, his testimony is that he was framed by Jackson and others.[1a] As in Wright v. Johnston, D.C., 77 Supp. 687, appellant's attorney was not in a position to argue that "my convicted client Jackson, for whom I am soon to plead for an amelioration of her sentence, is a monumental liar seeking to convict my honest and innocent client Hayman."

These facts disclose a conflict of interests similar to that considered in Glasser v. United States, 315 U.S. 60, 70, 62 S.Ct. 457, 86 L.Ed. 680; Wright v. Johnston, supra, and like that in Johnson v. Zerbst, 304 U.S. 458, 461, 58 S.Ct. 1019, 82 L.Ed. 1461. The likely prejudice to his client seems apparent. Were it not so clear, the language

---

stitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." (Emphasis supplied.)

1a. It is not for us to consider whether these witnesses did or did not frame the case against the appellant, however strong the evidence may appear. As stated in McCandless v. United States, 298 U.S. 342, 347–348, 56 S.Ct. 764, 766, 80 L.Ed. 1205, "an erroneous ruling which relates to the substantial rights of a party is ground for reversal unless it affirmatively appears from the whole record that it was not prejudicial." Where the error is prejudicial, we cannot ignore it because from the "dead record" guilt is otherwise proved. Bollenback v. United States, 326 U.S. 607, 615, 66 S.Ct. 402, 90 L.Ed. 350. These were jury cases, but here the trial judge was ignorant of the dual representation and is in the same position as a jury.

of the Glasser case, supra, 315 U.S. at page 75, 62 S.Ct. at page 467, 86 L.Ed. 680, is applicable.: "To determine the precise degree of prejudice sustained by Glasser as a result of the court's appointment of Stewart as counsel for Kretske is at once difficult and unnecessary. The right to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial."

The district court, in the instant proceeding, recognized this inconsistency but made a further finding that appellant's attorney represented his client Jackson "with the knowledge and consent and at the instance and request of the defendant herein, Herman Hayman." This finding was made though the absent appellant was an essential witness in the trial of the question of his "knowledge and consent," and should have been given the opportunity to cross-examine the witnesses against him. ·

In the Glasser case, supra, unlike the present case, the trial judge appointed the attorney representing the adverse interests. However, the Sixth Amendment does not restrict the right to a deprivation by the judge. The Amendment reads: "In all criminal prosecutions, the accused shall *enjoy* the right * * * to have the Assistance of Counsel for his defence." (Emphasis supplied.) Hayman's motion shows he did not "enjoy" the right here, nor was he given any opportunity to prove that he had not.

If, unknown to the court, the accused's counsel were bribed by an enemy of the accused to throw his case and the accused learned of it after conviction, the fact that the court had nothing to do with the wrong done, does not deprive him of his right to the writ.

It is erroneous to contend that the Court of Appeals for the District of Columbia holds that it is only where the court appoints his attorney that the accused may claim that he has not enjoyed the effective assistance of counsel. On the contrary, in Jones v. Huff, 80 U.S.App.D.C. 254, 152 F.2d 14, 15, that court reversed the dismissal of an application for a writ of habeas corpus which alleged that the attorney chosen by the convicted man so had conducted the trial that it became a "farce and a mockery of justice." It held that the accused was not given the "effective representation" required for the fair trial of the Fifth Amendment within the broad principles established in the Glasser case and in Mr. Justice Frankfurter's opinion in Malinski v. People of State of New York, 324 U.S. 401, 416, 65 S.Ct. 781, 89 L.Ed. 1029.

In Walker v. Johnston, 312 U.S. 275, 286, 61 S.Ct. 574, 579, 85 L.Ed. 830, Walker, as here, was convicted of a federal crime where, he claimed, in the conduct of the trial, he did not have the effective assistance of counsel, and hence the Sixth Amendment was involved. It is held that where not by the judge, but "by the conduct of the District Attorney [an officer of the court], he was deceived and coerced into pleading guilty when his real desire was to plead not guilty or at least to be advised by counsel as to his course. If he did not voluntarily waive his right to counsel [citing Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461], or if he was deceived or coerced by the prosecutor into entering a guilty plea [citing Mooney v. Holahan, 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791], he was deprived of a constitutional right." [2] (Emphasis supplied.) ·

If it were necessary to trace the deprivation of those rights to action or inaction on the part of the "court," there is at hand the rule that attorneys are officers of the court. In Johnson v. Zerbst, considered infra, it is held that the court is as much composed of its counsel as of its judge. One of the officers composing the court, the United States Attorney, is also of the executive branch of the government, the Department of Justice. As such, it was incumbent, in the circumstances of this case, for those officers to see that the constitutional rights of the accused were either pro-

2. The opinion continues: "The Government's contention that his allegations are improbable and unbelievable cannot serve to deny him an opportunity to support them by evidence."

tected or intelligently waived. Cf. McFarland v. United States, 80 U.S.App.D.C. 196, 150 F.2d 593, 594. A failure so to do might well be deemed a deprivation, chargeable to the court, of the effective assistance of counsel.

Further, sole reliance need not be placed on the Sixth Amendment. Where the prosecution chooses to utilize as one of its principal witnesses one awaiting sentence, knowing that such witness is represented by counsel who is also counsel for the accused, I think the requirement of the due process clause that the accused shall have a fair trial makes it mandatory that the prosecution inform the trial judge of the situation so that the judge may take appropriate steps to protect the rights of the accused.

Were the question properly before us, we would have to decide whether an attorney could thus represent two such clients, even at the request of one of them. For reasons later stated, I think it is not before us. Sufficient here to state that the motion made under Section 2255 of 28 U.S.C.A. is what it claimed on its face. That is, it is one upon which the relief "sought herein is to bring to the attention of this Honorable [District] Court facts which were not fully known to this Honorable Court at the time judgment and sentence was entered herein which, if fully known would have resulted in a different verdict and judgment."

All this three-day trial and its findings of fact and judgment were in the absence of the appellant, who was not notified of the hearing. So far as concerns appellant, he waited in his McNeil Island penitentiary, hearing nothing of his motion until it was decided against him in such an ex parte proceeding.

In Johnson v. Zerbst, 304 U.S. 458, 468, 58 S.Ct. 1019, 1024, 82 L.Ed. 1461, the question, as here, was whether Johnson was properly represented by counsel. The trial court denied habeas corpus on the ground that the application did not show facts which made the trial "void,"—that is to say, on absence of the constitutional jurisdiction to render the judgment. The Supreme Court reversed on the constitutional ground that the trial court, without such representation of the defendant, was without jurisdiction to convict him, saying, " * * * If the accused, however, is not represented by counsel and has not competently and intelligently waived his constitutional right, the Sixth Amendment stands as a *jurisdictional bar* to a valid conviction and sentence depriving him of his life or his liberty. A court's *jurisdiction* at the beginning of trial may be lost 'in the course of the proceedings' *due to failure to complete the court—as the Sixth Amendment requires—by providing counsel for an accused who is unable to obtain counsel,* who has not intelligently waived this constitutional guaranty, and whose life or liberty is at stake. If this requirement of the Sixth Amendment is not complied with, the court no longer has jurisdiction to proceed. The judgment of conviction pronounced by a court without jurisdiction is void, and one imprisoned thereunder may obtain release by habeas corpus. [Citing Hans Nielsen, Petitioner, 131 U.S. 176, 9 S.Ct. 672, 33 L.Ed. 118.] A judge of the United States—to whom a petition for habeas corpus is addressed—should be alert to examine 'the facts for himself when if true as alleged they make the trial absolutely void.'" (Emphasis supplied.)

It is arguable that since the Sixth Amendment was adopted in 1791 it at once became tied to the constitutional writ of habeas corpus of Article I, Section 9,—that is to say, the absence of such jurisdiction as a ground for the constitutional writ recognized in Johnson v. Zerbst in 1938 existed in 1791. If this argument be correct, the applicant's right to the writ then required no action of Congress such as in the subsequent habeas corpus provisions of the Act of February 5, 1867,[3] and in Section 2255 to make it effective. Nor could any act of Congress diminish that right.

However, assuming that the constitutional right to the writ does not cover the right to counsel of the Sixth Amendment and that the writ on the latter ground could not

3. 14 Stat. 385.

be granted until the habeas corpus act of 1867, the question remains: Did Congress intend in Section 2255 to wipe out the rights established in Johnson v. Zerbst, supra, and substitute therefor an ex parte proceeding? I prefer to place our decision on the answer to this question.

It must be admitted that Section 2255 accomplishes this in cases involving facts dehors the record if we omit its last qualification "unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention." Just prior to this qualification is the provision that the application for the writ "shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him, *or* that *such court* has denied him relief".[4] (Emphasis supplied.)

It is obvious that if the motion provided in the third paragraph of the section is granted, no application for the writ will be made. Hence, the alternative, the denial of the motion, shown as an alternative by the word "or," deprives all the prisoners sentenced by a court of the United States of their right to seek the writ. .

That is to say, all the elaborate provisions of the eleven sections 2241 to 2250 and 2253 of Title 28 were not written for any person convicted in a federal court. Can it be that in enacting all these provisions Congress was such an "Indian giver"?[5]

B. *The procedure by motion under Section 2255 is "inadequate or ineffective to test the legality of his detention" where the moving party is confined in a district other than that of his conviction, and the issue tendered requires testimony as to facts not appearing in the record of the proceedings of the trial leading to such conviction.*

I think that as to such tendered issues of fact the motion procedure has such inadequacy and ineffectiveness. The third paragraph provides for a hearing on the issues of fact ex parte the imprisoned man, of which he is given no notice and at which his body need not be produced. This appears from the following provisions of Section 2255:

"Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto. * * *

"A court may entertain and determine such motions without requiring the production of the prisoner at the hearing."

Here is the denial of procedural due process in a case involving liberty, which as well could be a case involving the moving party's life. The only notice of the hearing is to be given to the attorney of his opponent on the motion, the United States, and even if such notice is given to the moving party, what value would it have to a man confined in McNeil Island?

Undoubtedly under Section 2255 the United States, opposing the motion, could produce testimony viva voce, as it did. Hence the presence of the applicant was necessary to present and examine his own witnesses and to cross-examine those of the government. In addition he may want to testify himself. Prior to the trial and during it the prisoner, a thousand miles away, cannot seek subpoenas for witnesses to controvert those of the government, if he could guess

---

4. The last paragraph of Section 2255 provides: "An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section, shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him, **or that such court has denied him relief, unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention.**" (Emphasis supplied.)

5. If the provision could be interpreted to be merely a condition precedent to granting the writ, a matter considered later, the language falls within Mr. Justice Frankfurter's statement in Sunal v. Large, 332 U.S. 174, 184, 67 S.Ct. 1588, 1594, 91 L.Ed. 1982, that "it is fair to say that the scope of habeas corpus in the federal courts is an untidy area of our law". (Emphasis supplied.)

what the opposing witnesses would say—an ironical situation where under Section 2255 there is to be a "prompt hearing" of the motion.

It may be contended that the provision of Section 2255 that "a court may entertain and determine such motion without requiring the production of the prisoner at the hearing", though negative in character, affirmatively gives the court the power of issuance of its writ of habeas corpus for such production and that it is a reversible abuse of discretion to fail so to bring him over the one thousand miles of travel from the Washington penitentiary to Los Angeles, California. Hence it may be argued that we return the case to the district court for such production of the applicant.

The answer to this is that an order to bring in the prisoner to present his witnesses and conduct his case is itself a writ of habeas corpus. Under Section 2241 the court's writ does not run outside the Southern District of California. The Attorney General is not made a party by Section 2255. Even if he were and could be served with such process, the absence of the prisoner from the district makes the writ unavailing, though in a broad sense the Attorney General has the prisoner in his custody. Ahrens v. Clark, 335 U.S. 188, 191, 68 S.Ct. 1443, 1444, 92 L.Ed. 1898. That decision is based in large part upon the expense and difficulty of bringing the prisoner "perhaps thousands of miles from the District Court that issued the writ."

It is also apparent that a government subpoena to him to testify would be no substitute for the writ, for he may desire not to testify but to be present solely to present his own witnesses and cross-examine the government's, as in Mooney v. Holohan, 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791, where the case was one of later discovered subornation of perjury by the prosecution.

It may be suggested that since the coram nobis procedure [6] is civil we could return the case to the district court and, ignoring the provision solely for notice to the United States Attorney, attempt to obtain procedural due process by requiring that court to appoint an attorney practicing in that court to represent the prisoner in McNeil Island and have the motion submitted on depositions or affidavits. So to proceed would require us to make the doubtful assumption that in a proceeding which is a substitute for habeas corpus, the prisoner could be denied the right to confront the opposing witnesses and to testify viva voce on his own behalf.

Such a procedure would require each party to submit interrogatories on the direct and cross and redirect examination of the witnesses. For the Southern California attorney there would be, first, the time consumed in the preliminary correspondence with his client in McNeil Island to discover his client's case, a clumsy process by correspondence, and his witnesses. Then would follow the preparation of the affidavits of the prisoner. When these are served on the United States there would be the time consumed in preparing the cross-interrogatories. Then well could be considered by the court the admissibility of certain of the cross-interrogatories. When decided, they would have to be mailed to the prisoner at McNeil Island. What they adduce will be returned to the Southern California attorney, who well may have further redirect interrogatories required by the testimony in response to the cross-examination.

Additional similar consumption of time would be certain in the affidavits of other witnesses on behalf of the prisoner. In a matter of life or liberty procedural due process could not require less.

The case would at last have reached the point where the United States could prepare its responsive affidavits. As to each of these there well may be the same extended delays. Then, quite likely, a similar time would elapse for the prisoner's affidavits to meet the government's testimony. If the moving party is entitled to his release, every day of his imprisonment so added to the constitutionally prompt process is robbed from the prisoner's life.

Such a proceeding is an "inadequate or ineffective" substitute for the eleven provisions for the writ itself and would not

6. Discussed infra.

satisfy even the requirement of the "prompt hearing thereon" of the third paragraph of Section 2255.

It is thus apparent that Section 2255, when such questions of fact are presented, may be construed as a substitute for the writ only when the court of the prisoner's conviction is of the district where he is confined. It is also apparent that where the motion requires a decision on such facts in the court of a distant district it lacks the effectiveness required by the last clause of the section.

With regard to the motion's other tendered issue, that the sentencing judgment shows *on its face* that two of the sentences imposed are beyond the court's jurisdiction, it well may be argued that it presents a contention for the right to the constitutional writ, which Article I, Section 9 provides cannot be suspended by any act of Congress. The application for the constitutional writ must be presented to a judge or a court having the power to issue it. It is *that* judge or court which must first decide whether the application has allegations warranting the writ's issuance. If it does so direct the court orders the writ to issue and the prisoner to be produced, as was done in 1833 in Ex parte Watkins, 7 Peters 568, 579, 8 L. Ed. 786. That case dealt with the constitutional writ long before the Act of 1867, when the question, as here, was whether the trial court's order gave the jailor jurisdiction to hold the prisoner. Here in Section 2255, by permitting a distant sentencing court so to dispose of the jurisdictional question, where it cannot issue the writ, Congress, it may be contended, is suspending it in violation of the Constitution.

However, if the motion be deemed a sufficient procedure to determine such a question of jurisdiction shown in the judgment roll, a further question arises. This is whether, since we have decided that the appellant has the right to file his writ of habeas corpus involving such questions of fact in the district court of the district wherein he is confined, we are required to consider on this appeal from the motion the questions of law decided by the court below. To do so means that Congress intended that there should be two proceedings for an imprisoned man having both questions of law and questions of fact such as here presented, one in the court of sentence outside the district of confinement and the other in a court of the district where he is confined.

We know that Congress enacted Section 2255 to relieve the courts of the heavy burden of the great number of habeas corpus applications annually filed, referred to by the Supreme Court in Price v. Johnston, 334 U.S. 266, 293, 68 S.Ct. 1049, 92 L.Ed. 1356, and cases there cited. A construction, placing the judicial burden on issues of fact in the district of the imprisoned man, would severely increase that burden in all cases also presenting other issues of law if we held the motion of Section 2255 to be validly exercised by the sentencing court on the law issues. I think that such doubling of the judicial tribunals also lacks the effectiveness required by the last clause of the section.

Even if the last paragraph of Section 2255 were susceptible of the construction that one is entitled to seek the writ though the motion be denied,[7] it is apparent that the period of delay during which the motion is tried

7. Judge Huxman in his dissent in Barrett v. Hunter, 10 Cir., 180 F.2d 510, 516, a case hereafter considered, states that "The following cases seem to hold that compliance with the section is a prerequisite: Wong v. Vogel, D.C., 80 F.Supp. 723; Stidham v. Swope, D.C., 82 F.Supp. 931; U. S. v. Calp, D.C., 83 F.Supp. 152; St. Clair v. Hiatt, D.C., 83 F.Supp. 585; Burchfield v. Hiatt, D.C., 86 F.Supp. 18; Fugate v. Hiatt, D.C., 86 F.Supp. 22; Parker v. Hiatt, D.C., 86 F.Supp. 27; Mugavero v. Swope, D.C., 86 F.Supp. 45.

"The following cases seem to hold that it is a substitute remedy for habeas corpus: Taylor v. U. S., 4 Cir., 177 F.2d 194; Birtch v. U. S., 4 Cir., 173 F.2d 316; Howell v. U. S., 4 Cir., 172 F.2d 213; United States v. Meyers, D.C., 84 F.Supp. 766; United States v. Lowery, D.C., 84 F.Supp. 804. Remark: In a number of the cases the court's pronouncement is in the form of dicta and is of value only as it shows the inclination of the court."

and, on denial, during the appeal provided in the sixth paragraph of the section, a step necessary to complete the judicial process, will cover months of litigation. This is shown in the time consumed in disposing of scores of such motions already considered by the federal courts,[8] whose volume discloses that Section 2255 has brought little, if any, relief of the judicial burden of considering the great numbers of applications for the writ annually made.

One of the prime essentials of the imprisoned man to his right to seek the writ of habeas corpus is the prompt consideration of his application. Every day of wrongful imprisonment is that much taken from the free life of the prisoner.

In determining the essential requirements of the writ of habeas corpus as with other essential provisions of the Constitution, we are required to examine the English law as it was in 1789. As stated in 1807 by Chief Justice Marshall in Ex parte Bollman, 4 Cranch 75, 94, 2 L.Ed. 554, "for the meaning of the term habeas corpus resort unquestionably may be had to the common law."

Thus the act of the 31 Car. II, c. 2 (1679), is to be examined for the character of the relief granted by this high prerogative writ. 10 Halsbury's Laws of England, 57 (1909 Ed.) states that its preamble "recited that great delays had been used in making returns to writs of habeas corpus in criminal or supposed criminal cases. To remedy this s. 1 of the statute enacted that in such cases the return should be made within three days after the service of the writ if the place where the prisoner is detained is within twenty miles from the court, and if beyond the distance of twenty miles and not above one hundred miles, then within the space of ten days, and if beyond the distance of one hundred miles, then within the space of twenty days after the delivery of the writ, and not longer * * *"

Congress embodied this constitutional requirement of celerity in its Act of February 5, 1867, and codified it in Section 756 of the Revised Statutes by providing "Any person to whom such writ [of habeas corpus] is directed shall make due return thereof within three days thereafter, unless the party be detained beyond the distance of twenty miles; and if beyond that distance and not beyond a distance of a hundred miles, within ten days; and if beyond the distance of a hundred miles, within twenty days."

Of this the Supreme Court in Ex parte Baez, 177 U.S. 378, 388, 20 S.Ct. 673, 677, 44 L.Ed. 813, said "This section was taken almost literally from the habeas corpus act, chap. 2 of the 31st Car. II., which was designed to remedy procrastination and trifling with the writ." The 31 Car. II provision is again codified in 28 U.S.C.A. § 2243 providing that the writ shall be granted "forthwith" and that it "shall be returned within three days unless for good cause additional time, not exceeding twenty days, is allowed."

Clearly, if a necessary condition precedent to an application for the writ, Section 2255 destroys the application's immediate and forthwith consideration required by the Constitution and the laws and decisions interpreting it. A further absurdity is that Section 2255 is described by the revisers of Title 28 as one which "restates, clarifies and simplifies the procedure in the nature of the ancient writ of error coram nobis."[9] The motion's decision adverse to the prisoner, unlike habeas corpus, is res judicata of the issues presented. Waley v. Johnston, 316 U.S. 101, 105, 62 S.Ct. 964, 86 L.Ed. 1302; Robinson v. Johnston, 9 Cir., 118 F.2d 998, 1000. When, after such months of delay, the application for the writ it presented, the warden will have it denied because the issues presented have been decided against the applicant in the 2255 proceeding!

If, on the other hand, we could treat the decision on such issues of fact as not res judicata because ex parte and as a mere preliminary to the application for the writ,

8. Typical of these are Adelman v. United States, 9 Cir., 174 F.2d 283, six months; Davis v. United States, 9 Cir., 175 F.2d 19, nine months; Byers v. United States, 10 Cir., 175 F.2d 654, six months; Crowe v. United States, 4 Cir., 175 F.2d 799, four months.

9. Reviser's Note, 28 U.S.C.A. following § 2255.

the judicial burden in such proceedings would be doubled by Section 2255, instead of giving the relief to the courts which Congress was seeking.

In Barrett v. Hunter, 10 Cir., 180 F.2d 510, Section 2255 is held valid on the assumption that the court in a district other than the one of the prisoner's incarceration has the power to bring the prisoner's body before it. The opinion does not consider such cases as Ahrens v. Clark, discussed above, where the writ is held not to run outside the district of the prisoner's confinement. I cannot agree with the decision's statement 180 F.2d on page 514 that "where the motion and any response thereto present material and substantial issues of fact requiring a hearing, generally, in the exercise of a sound discretion, the Court should require the production of the prisoner." Even in the cases in which the motion is made in the district where the prisoner is confined, it is my opinion that wherever evidence of new facts is to be presented, the requirement of appearance is a right of the prisoner and not subject to the court's discretion. The dissent of Circuit Judge Huxman 180 F.2d at page 516 is closely in accord with the view I here take of Section 2255.

There are cases in other circuits which hold contra to the above view of Section 2255, such as Crowe v. United States, 4 Cir., 175 F.2d 799. Here exist the opposing decisions of circuits referred to in Supreme Court Rule 38, par. 5(b), 28 U.S.C.A.

I am inclined to agree with Judge Stephens' opinion for a reversal on the ground that Section 2255 is unconstitutional in its entirety.

However, I think we are required to dispose of the appeal without determining such a constitutional question, since the decision may be disposed of on words of the statute which present a non-constitutional ground. Cf. Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 347, 56 S.Ct. 466, 80 L.Ed. 688.

It well may be that, in a case where the motion to the court of a district in which the prisoner is not confined is solely on questions of law, the provision that he may not be brought before the court is not unconstitutional. The third paragraph of Section 2255 may be construed as requiring notice to the prisoner in such law cases, despite the absence of such a specific provision.

On this the dictum of the Supreme Court in Johnson v. Eisentrager, 339 U.S. 763, 70 S.Ct. 936, should be considered. At page 778 of 339 U.S., at page 944 of 70 S. Ct. the Court, in a footnote, recognizes the provision of Section 2243, stating: "*Unless the application for the writ and the return present only issues of law* the person to whom the writ is directed shall be required to produce at the hearing the body of the person detained." (Emphasis supplied.)

As seen, this opinion, while stating the possible unconstitutionality of Section 2255 where the motion is confined to questions of law, is grounded on its "inadequacy and ineffectiveness" where the motion tenders both an issue of fact and one of law.

In view of Judge Stephens' concurrence in the result, the judgment is reversed and the motion below is ordered dismissed.

STEPHENS, Circuit Judge (concurring).

I, too, think the judgment should be reversed and dismissed but I view the case somewhat differently from the view expressed by the Chief Judge in his opinion.

It is my conviction that Section 2255 of the revised Judicial Code, Title 28 U.S.C.A., cuts to the very heart of the constitutional writ of habeas corpus as it applies to prisoners who are confined under federal convictions. It is true that the writ has been seriously abused but a lethal remedy is neither valid nor justifiable. Courts have gone a long way to stop abuses through causeless, scandalous or repetitious petitions for the issuance of the writ of habeas corpus, and the new Judicial Code, excluding Section 2255, goes further to the same end. It seems to me that it is quite unfortunate and unnecessary that the chapter in the Judicial Code which is devoted to habeas corpus should contain a section which, on its face, nullifies much of it. It is nothing new that

executive and legislative and some judicial impatience with the writ has led to attempts to emasculate it. Fortunately they have failed. Now in an attempt to enlarge the trial court's right to correct certain faulty phases of the sentence meted out to one under federal court conviction, it is attempted by Section 2255 to authorize a court hearing that leads to a judgment upon the prisoner's fundamental rights without notice to him, in his absence, in the absence of his counsel and with the prosecutor participating. The Chief Judge treats this phase of the case admirably in greater detail.

It will be noticed that the section under consideration begins with a paragraph which authorizes a motion to correct an erroneous sentence.

"A prisoner in custody under sentence of a court established by Act of Congress, claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

"A motion for such relief may be made at any time. * * *"

It is well down in the next following paragraph that the *judgment* is first mentioned and thereafter the scope of the section is expanded to embrace practically the whole field of habeas corpus within the area of federal court convictions: "Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto. If the court finds that the *judgment* was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the

judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate. * * *" ¦ [Emphasis supplied.]

It is readily seen that the scope of the section goes far beyond the recital in the first paragraph as to its purpose and clearly becomes a proceeding largely displacing the writ as a proceeding open to prisoners under federal court convictions. True, the section requires the motion as a precedent to the use of the writ but this does not validate it and it is not an alternative choice to the use of the writ for, while the first paragraph of the section is worded as permissive (the prisoner "may move the court"), the concluding paragraph (about to be quoted) specifically denies his right to have his writ of habeas corpus entertained if he has failed to act by motion "or that such court has denied him relief": "An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section, shall *not be entertained* if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him, or that such court has denied him relief, unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention." [Emphasis supplied.]

Intervening parts of the section are:

"A court may entertain and determine such motion without requiring the production of the prisoner at the hearing.

"The sentencing court shall not be required to entertain a second or successive motion for similar relief on behalf of the same prisoner.

"An appeal may be taken to the court of appeals from the order entered on the motion as from a final judgment on application for writ of habeas corpus."

The clause in the concluding paragraph, "or that such court has denied him relief," upon close study of the whole section appears little less than a cruel lure for, after an adverse "judgment" on the motion, the movant is by no means free to exercise his constitutional right to the writ of habeas

corpus whereby a speedy determination may be had under the safeguards we term "due process." When the litigation under the motion provided for finally ends, he is faced with a judgment which would seem to be res judicata of the issues litigated. If not res judicata the judgment would be practically conclusive upon a court subsequently entertaining a petition for the writ. In my opinion it comes down to the bare facts that the use of habeas corpus has been suspended during the litigation under the motion and practically denied for all time to a prisoner who has grasped the only remedy open to him under the terms of the section.

"The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." Sec. 9, Cl. 2, art. I, United States Constitution.

Up to now I have purposely refrained from considering and I have said nothing about the concluding or saving clause of the section. If the prisoner has not acted under the section or the court has denied him relief, a petition for the writ shall not be entertained " * * * unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention." The Chief Judge, if I understand his opinion, bases his proposed decision upon the ground that by reason of the lack of due process having been denied Hayman in the circumstances obtaining, the section is inadequate and ineffective and therefore does not apply to him. I readily concur in the conclusion that the judgment must be reversed and the motion dismissed. But I think there is lack of due process with or without the saving clause. If there is lack of due process inherent in the proceeding provided by the section, it applies to every hearing under the section and every judgment under it would be fatally defective. The authors did not visualize any defect in the process and thought, of course, the section was entirely adequate and effective. The saving clause in my opinion was added to cover exceptional circumstances. One exceptional circumstance might be that a prisoner would be executed before the due course of the motion could run to a decision. Other examples could be conjured up.

To state it another way, I would see nothing inadequate or ineffective in the Act if a free choice were left to the prisoner to proceed under the motion or by petition for the writ of habeas corpus. If he chose to proceed under the motion, with all of its restrictions, there would be nothing to interfere with the adequacy or effectiveness of such a test as to "the legality of his detention."

But a free choice is not open to him (except in unusual circumstances which do not obtain here), his case must proceed under the motion through the one-sided hearing and ordinary appeal. When the judgment is at last final, it is practically if not technically res judicata, and the issues have been determined under the harsh restrictions provided in Section 2255. Even if he finally wins his relief, it is after long litigation not *required* to be placed ahead of other litigation during which his rights to the benefits of the writ of habeas corpus have been suspended.

I am sure that it is always the duty of the judge—both trial and appellate—to see to it that fundamental rights touching any person's right to freedom are protected and preserved and that such duty cannot be absolved by strict legalism. Appellant in this case has not raised the points I have considered but I think this court would be remiss if, for that reason, it gave them no heed but should affirm the judgment, thereby allowing it to stand as a practical bar to the classical method of trying vital issues.

I think the section cannot be construed so as to avoid the fatal vice of suspending and, for all intents and purposes, of denying the entertainment by the court of a petition for the writ of habeas corpus to appellant Hayman and that this court has the duty of declaring the judgment herein a nullity.

POPE, Circuit Judge (dissenting).

I think that the questions discussed in the opinions of Judge Denman and of Judge Stephens are of much interest, so far as the abstract propositions stated by them are concerned. No doubt at some future time this court will be required to decide these matters.

But I think none of these questions are before us in this case. The discussion by Judge Stephens of the academic question as to whether the last paragraph of section 2255, in making the motion authorized by this section a condition precedent to or a substitute for, an application for a writ of habeas corpus, is an invalid attempt to suspend the writ, is interesting, but not appropriate here. For this appellant is not one who has sought habeas corpus and been denied relief because of the prohibitions of this paragraph. Were he in that situation he would be in a position to raise these questions. Such were Barrett v. Hunter, 10 Cir., 180 F.2d 510, and Martin v. Hiatt, 5 Cir., 174 F.2d 350. Appellant entered the court below expressly seeking the benefits of the section. He obtained the re-examination of the record which section 2255 called for. As I shall show he was not entitled to more.

Insofar as it is based on constitutional grounds, the argument runs afoul not only of the rule that a court will not "anticipate a question of constitutional law in advance of the necessity of deciding it", but also of the rule that a court "will not pass upon the constitutionality of a statute at the instance of one who has availed himself of its benefits." Ashwander v. Tennessee Valley Authority, 297 U.S. 288, at page 346, 56 S. Ct. 466, 483, 80 L.Ed. 688.

Judge Denman also finds difficulty in reconciling section 2255 with constitutional limitations. This he resolves by holding the procedure authorized by the section "inadequate or ineffective" to deal with appellant's motion, and that therefore the judgment must be reversed. As I think the determination of the district court was right, and that it reached the only possible result, I think the order should be affirmed.

Appellant came forward with a motion which showed on its face that he was entitled to no relief. These are his complaints:

(1) That "he was arrested without a warrant, and questioned for five days before he

* * * was taken before a committing magistrate." There is no claim that any confession or admission made during these five days was offered or received in evidence.[1]

(2) That he was subjected to double jeopardy, in that several of the different counts of the indictment charged the same offense. The motion does not favor us with a statement as to whether his sentences were all concurrent. But the motion shows that count one charged violation of section 78, and count two charged violation of section 63, of Title 18. The district court's findings clarify the record for us, and show that "a conviction for the offense charged in count two required proof of facts not required to establish the offense charged in count one." The sentences under these two counts were made to run consecutively. Those under all other counts were to be served concurrently with that under count two, and hence there is no basis for complaint here. Sinclair v. United States, 279 U.S. 263, 299, 49 S.Ct. 268, 73 L.Ed. 692.

(3) That he was deprived of the assistance of counsel in that "codefendant Juanita Jackson," who testified against him, was represented by his attorney, who did not tell appellant he was also defending Juanita Jackson, "thus creating conflict of interest." (There was no "codefendant." He was the sole defendant.)

I cannot agree with Judge Denman's conclusion that this allegation about his lawyer showed appellant was deprived of a constitutional right. The lawyer was chosen by himself, not by the court. Presumably he was the one person best prepared to try the case. I assume that Juanita Jackson, having pleaded guilty, hoped to gain favor by her testimony against appellant. It seems to be suggested here that it was the duty of the attorney to withdraw as counsel the moment he knew this witness would be called. I think it a purely imaginary assumption that he would not cross-examine Jackson as well as might some other lawyer. But, even indulging that assumption, and as-

---

1. And therefore he has no complaint under the rule in the McNabb case. Townsend v. Burke, 334 U.S. 736, 738, 68 S.Ct. 1252, 92 L.Ed. 1690; Wheeler v. United States, 82 U.S.App.D.C. 363, 165 F.2d 225, 231.

suming that a court, either proceeding under Section 2255, or under a petition for a writ of habeas corpus, could conclude that the attorney in not informing appellant of his prior representation of Juanita Jackson, or in not withdrawing from the case notwithstanding his general preparation to try it, was guilty of fraud and misconduct, what of it?

Are we now to add to all the other grounds for collateral attack upon a judgment of conviction that the accused's attorney failed, at some point in the trial, to take the right turn, or failed to inform the client of some fact in the lawyer's experience, which, if known to the client, might have led to some other choice of counsel?[2]

In dealing with the court a lawyer must conduct himself as an officer of the court, but that he is thus referred to does not make him an arm of government to which constitutional limitations are addressed.[3]

2. Cf. Diggs v. Welch, 80 U.S.App.D.C. 5, 148 F.2d 667, 669: "The result of such an interpretation would be to give any Federal prisoner a hearing after his conviction in order to air his charges against the attorney who formerly represented him. It is well known that the drafting of petitions for habeas corpus has become a game in many penal institutions. Convicts are not subject to the deterrents of prosecution for perjury and contempt of court which affect ordinary litigants. The opportunity to try his former lawyer has its undoubted attraction to a disappointed prisoner. In many cases there is no written transcript and so he has a clear field for the exercise of his imagination. He may realize that his allegations will not be believed but the relief from monotony offered by a hearing in court is well worth the trouble of writing them down. To allow a prisoner to try the issue of the effectiveness of his counsel under a liberal definition of that phrase is to give every convict the privilege of opening a Pandora's box of accusations which trial courts near large penal institutions would be compelled to hear. * * * For these reasons we think absence of effective representation by counsel must be strictly construed. It must mean representation so lacking in competence that it becomes the duty of the court or the prosecution to observe it and to correct it. * * * They are all cases where the circumstances surrounding the trial shocked the conscience of the court and made the proceedings a farce and a mockery of justice."

Alred v. United States, 4 Cir., 177 F.2d 193, 194: "He may not have the sentences entered against him set aside and his case tried over by claiming that the attorney whom he selected did not properly represent him."

See also Dorsey v. Gill, 80 U.S.App.D. C. 9, 148 F.2d 857, 875; Hudspeth v. McDonald, 10 Cir., 120 F.2d 962, 968; Merritt v. Hunter, 10 Cir., 170 F.2d 739, 741.

3. Note that in the Glasser case, 315 U. S. 60, 62 S.Ct. 457, 86 L.Ed. 680, the court characterized what it there disapproved as action of the court. See particularly, 315 U.S. at pages 70, and 71, 62 S.Ct. at page 464, 86 L.Ed. 680: "a federal **court** cannot constitutionally **deprive** an accused * * * of the assistance of counsel." " * * * The Sixth Amendment contemplates that such assistance be untrammeled and unimpaired by a **court order** requiring that one lawyer shall simultaneously represent conflicting interests." Also 315 U.S. on page 71, 62 S.Ct. at page 365: " * * * the **court** may fairly be said to be responsible for creating a situation which resulted in the impairment of those rights." (Emphasis supplied.) In Mooney v. Holohan, 294 U.S. 103, 113, 55 S.Ct. 340, 342, 79 L.Ed. 791, the court speaks of the impact of the Fourteenth Amendment, there involved, as follows: "That amendment governs any action of a state, 'whether through its legislature, through its courts, or through its executive or administrative officers.' "

It is this carefully observed distinction which accounts for the statement of the rule in the case of Diggs v. Welch, supra, [80 U.S.App.D.C. 5, 148 F.2d 670], note 2, that misconduct of an attorney does not amount to absence of effective representation of counsel within the meaning of the Sixth Amendment except in the extreme case where the representation was "so lacking in competence that it becomes the duty of the court or the prosecution to observe it and to correct it", and where it "shocked the conscience of the court and made the proceedings a farce and a mockery of justice." (Emphasis added). This statement of the rule has been repeated by the same court in Dorsey v. Gill, supra, note 2, and in Jones v. Huff, 80 U.S.App.D.C. 254, 152 F.2d 14, and by the Court of Appeals for the Second Circuit in United States v. Wight, 176 F.2d 376, 379.

The suggestion that the prosecutor should have suspected appellant's attorney of improperly assuming a dual role, and have called it to the attention of the court, I think wholly without substance. A comparison of such a situation with that where the prosecutor's conduct is such that the accused "was deceived and coerced into pleading guilty" Walker v. Johnston, 312 U.S. 275, 286, 61 S.Ct. 574, 579, 85 L.Ed. 830, or where the Government "knowingly employed false testimony" Mooney v. Holohan, 294 U.S. 103, 113, 55 S.Ct. 340, 79 L. Ed. 791; Price v. Johnston, 334 U.S. 266, 275, 68 S.Ct. 1049, 1055, 92 L.Ed. 1356, is, as I see it, too farfetched to be realistic.

In the case of Dorsey v. Gill, supra, note 2, the prisoner claimed that he pleaded guilty because of a misrepresentation of fact made to him by his attorney. The court held the allegation insufficient, citing Diggs v. Welch, supra, note 2, as authority. Here there is nothing startling, or even unusual, about an attorney representing each of two alleged accomplices. The gist of appellant's complaint is that his attorney failed to tell him about representing Jackson. But here there was no such "farce and mockery of justice" as must have "shocked the conscience of the court." In fact, neither the court nor the prosecutor could have been aware of any irregularity. Much less could it be said that the representation was "so lacking in competence" that it was "the duty of the court or the prosecution to observe it and to correct it." The facts here have no resemblance to those in Jones v. Huff, 80 U.S.App.D.C. 254, 152 F.2d 14,

which presented the extraordinary case mentioned in Diggs v. Welch, supra.

One must wonder what appellant would have had to say if, on first learning that Juanita Jackson would be called as a witness, his attorney had stood up and asked to be discharged, or if the United States Attorney had then suggested to the court that he do so.[4]

In my opinion all that the trial judge could possibly do with this motion was to lay it alongside the indictment and the judgment, and these papers would "conclusively show that the prisoner is entitled to no relief." The motion was not sufficient to take the court beyond this first clause in the third paragraph in the section. That he unnecessarily took testimony is immaterial. Since the motion was groundless, the court could properly dismiss it.[5]

I think the order should be affirmed.

On Petition for Rehearing.

DENMAN, Chief Judge.

The petition of the United States for rehearing, disagreeing with the dissenting opinion, concedes the validity of the motion's pleading that Hayman has been denied the effective assistance of counsel, for it urges "that the judgment be reversed solely on the ground that a factual issue * * * [the effective assistance of counsel] is raised which requires appellant's presence at the hearing below."

One ground for a rehearing is the difference in views of the opinions of Judge Denman and Judge Stephens. This has been resolved, for, upon further considera-

---

4. If we are permitted, as Judge Denman undertakes to do, to examine the record on another appeal for the purpose of discovering what happened at appellant's trial, we will discover some interesting circumstances. It was shown by testimony of numbers of witnesses, wholly apart from the witness Jackson, that appellant was engaged in systematically purloining from the mail boxes where they had been delivered, government checks, chiefly those for veterans and for soldiers' family allowances. He had thus stolen, forged and cashed a great number of such checks, and was therefore doubtless well advised to waive a jury, as he did. Since a jury was not present

it was unnecessary for Hayman's counsel to cross-examine Jackson as to her motives,—the experienced trial judge who heard the case knew as well as anyone, and without any such cross-examination, the caution which he must exercise in considering the testimony of this accomplice. I find nothing in the record to lend any support to a claimed lack of effective representation by counsel.

5. Cf. Walker v. Johnston, 312 U.S. 275, 284, 61 S.Ct. 574, 578, 85 L.Ed. 830: "It will be observed that if, upon the face of the petition, it appears that the party is not entitled to the writ, the court may refuse to issue it."

tion, Judge Denman concurs in a reversal on the ground that Section 2255 is unconstitutional because not a substitute for the writ of habeas corpus and yet denies that writ if the motion is denied.·

No legislation states that one wrongfully imprisoned is confined to a single application for a writ of habeas corpus. The Supreme Court in deciding that the wrongfully imprisoned person may make more than one application for the writ on the same issues could not have placed its decision on statutory grounds. It must have done so on the character of the constitutional writ.

Section 2255 grants no such right. Since it is a coram nobis proceeding, a prior decision on a prior motion is res judicata of a subsequent motion on the same issues. Hence, as the statute states, the court *"shall not be required"* by the imprisoned man to entertain a second such motion. The "shall" is mandatory. No such discretion is granted the sentencing court, as is given the judge hearing the application for the writ under 28 U.S.C.A. § 2244.

In the alternative we are also agreed that in this case, where the issue to be tried is on the facts not known to the court in which the conviction was had and as well and more expeditiously could be tried in a habeas corpus proceeding in the jurisdiction of confinement, the dismissal is required under the reasoning of Chief Judge Denman's opinion.

■ The government's petition's sole remaining contention is that the Section 2255 proceeding is not "inadequate and ineffective to test the legality of the detention," and is a substitute for the writ of habeas corpus because the moving party may make himself a *witness* in his motion proceeding by use of the writ of habeas corpus *ad testificandum.* Having made himself a witness he is then in court and may prosecute his case, introduce other witnesses and cross-examine those of the government. In other words the writ *ad testificandum* is a substitute for the writ *ad subjiciendum.*

Assuming the government's contention that this writ is an exception to all the oth-

ers and is not confined to the territorial jurisdiction of the issuing court, this does not make the Section 2255 proceeding the equivalent of one in habeas corpus. The writ *ad testificandum* would not be available to a moving party who does not intend to be or cannot be a witness at the hearing of the motion, but has other witnesses who will prove, say, that he was convicted on perjured testimony procured by the prosecution.[1] His application for the writ *ad testificandum,* in which he swears he desires to testify when he has no such intention, would be based on perjury.

If the government's contention is correct that use of the writ *ad testificandum* makes the Section 2255 proceeding the same as that in habeas corpus, then, in Ahrens v. Clark, 335 U.S. 188, 191, 68 S.Ct. 1443, 92 L.Ed. 1898, the absurdity could be argued that upon the applicants' filing for the writ of habeas corpus in the District of Columbia, they could be brought there by the writ *ad testificandum* and thus create jurisdiction in the District of Columbia court to prosecute their cause. Having arrived in court as witnesses they then would acquire the right to cross-examine opposing witnesses. We cannot believe that the Supreme Court was of the opinion that the writ *ad testificandum* so could be used.

In the instant case Hayman, if producing himself by the writ *ad testificandum,* would not be in custody of the court as under the writ *ad subjiciendum.* He would be in the custody of the marshal. United States ex rel. Quinn v. Hunter, 7 Cir., 162 F.2d 644, and cases there cited. He would have no power to introduce witnesses or cross-examine his opponents, an essential of the "great writ."

Furthermore, there is no merit in the contention of the petition that the writ *ad testificandum* is excluded from 28 U.S.C.A. § 2241, which confines the district court's power to issue writs of habeas corpus to that court's territorial jurisdiction. That section specifically provides for the writ *ad testificandum* in its subsection (c) (5). In this respect the section reads:

1. As in Mooney v. Holohan, 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791.

"(a) Writs of habeas corpus may be granted by * * * the *district courts* * * * within *their respective jurisdictions*. * * *

* * * * * *

"(c) The writ of habeas corpus shall not extend to a prisoner unless—

"(1) He is in custody under or by color of the authority of the United States or is committed for trial before some court thereof; or

"(2) He is in custody for an act done or omitted in pursuance of an Act of Congress, or an order, process, judgment or decree of a court or judge of the United States; or

"(3) He is in custody in violation of the Constitution or laws or treaties of the United States; or

* * * * * *

"(5) It is necessary to bring him into court *to testify* or for trial." (Emphasis supplied.)

The words "to testify" cover the writ *ad testificandum,* which is as much restricted as to jurisdiction as the writ *ad subjiciendum* considered by the Supreme Court in Ahrens v. Clark, 335 U.S. 188, 190, 68 S.Ct. 1443, 92 L.Ed. 1898. In that decision the writ is held to be confined to the district court's territorial jurisdiction, the Court 335 U.S. at page 191, 68 S.Ct. at page 1444, giving as one of its reasons for holding that Congress did not contemplate bringing the prisoner "perhaps thousands of miles from the District Court that issued the writ: [that the] opportunities for escape afforded by travel, the cost of transportation, the administrative burden of such an undertaking negate such a purpose."

We can conceive of no principle of interpretation which gives the district court extraterritorial jurisdiction for the one writ as distinguished from the other. The expense and difficulty in bringing Hayman the thousand miles from McNeil Island to Los Angeles are the same whether he is brought to testify or to litigate his motion.

Nor is there merit in the contention that pauper Hayman could have himself brought himself by subpoena at *government expense* from McNeil Island to Los Angeles under Criminal Rule 17(b), 18 U.S.C.A. Such a contention assumes the Section 2255 procedure to be a part of the criminal prosecution in which he was convicted. We do not agree.

The habeas corpus proceeding is civil in nature and Section 2255 as a substitute therefor is phrased to cover the same area of relief. Its order is one from which the appeal time is the longer period of a habeas corpus case than the 10 days for a criminal judgment, that statute providing that "An appeal may be taken to the court of appeals from the order entered on the motion as from a final judgment on application for a writ of habeas corpus." It is a coram nobis proceeding independent from the case in which the conviction was had. Like the habeas corpus proceeding, it is civil in its nature. In this we are in agreement with the decision of the Court of Appeals of the District of Columbia, Bruno v. United States, 86 U.S.App.D.C. 118, 180 F.2d 393, 395. A civil subpoena would be valueless to the pauper Hayman to bring either himself or his witnesses to the district court in Los Angeles.

The writ of certiorari is required because of the opposing decisions cited in Chief Judge Denman's opinion. The Eighth Circuit, in Weber v. Steele, Warden, 185 F.2d 799, 800, creates a further ground for certiorari. It carries to a logical absurdity the proposition that litigation under Section 2255 is a condition precedent to the right to the writ of habeas corpus. That decision states: "The purpose of Section 2255 was to require a federal prisoner to exhaust his remedies in the courts of the District and Circuit in which he was convicted and sentenced, and to apply to the Supreme Court, on certiorari from a denial of such remedies, before seeking release on habeas corpus. This means that he must exhaust all the ordinary remedies available to him before applying for an extraordinary remedy."

That is to say, the right to the writ is "suspended" in violation of the Constitution in any case until from eighteen months to two years after the motion under Section 2255 is filed, a period spent in three successive courts. *By such delay, the prisoner who, as here, may not even know a hearing*

*was to be had on his motion, well may have served the remaining period of an illegal sentence.* This, although the common law, our Habeas Corpus Act of 1867, and now 28 U.S.C.A. § 2243 provide a 3 to 20-day time limit on the warden's return.

Since our opinions were filed, the motions under the statute have continued to mount. The purpose of its enactment is said to be to relieve the district judges of the multiplicity of applications for the writ. It seems that Chief Judge Parker is disappointed in his prognosis in 8 F.R.D. 178, that "The provisions of the Revised Code preserved everything of importance in that procedure while *eliminating the abuses* to which it has given birth." (Emphasis supplied.)

The petition for rehearing is denied.

POPE, Circuit Judge (dissenting).

Judge Denman, in his latest opinion, now concurs with Judge Stephens' original opinion, thus making the latter the opinion of the court. I think this decision that § 2255 is void in its entirety is most unfortunate. Why it is unwarranted here could not be better stated than in the words of Judge Denman's original opinion: "However, I think we are required to dispose of the appeal without determining such a constitutional question, since the decision may be disposed of on words of the statute which present a non-constitutional ground. Cf. Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 347, 56 S.Ct. 466, 80 L.Ed. 688."

My associates also say that they stand by "the reasoning of Judge Denman's opinion". The results reached in that opinion were predicated upon the validity of Judge Denman's assertion that the presence of the appellant was required, and that there exists no means of procuring it. Portions of the latest opinion are devoted to an attempt to answer the suggestion of the petition for rehearing that the attendance of ap-

pellant is available by writ of habeas corpus ad testificandum by citing Ahrens v. Clark, 335 U.S. 188, 68 S.Ct. 1443, 92 L.Ed. 1898. But even if that case controls, which I very much doubt,[1] the matter cannot be disposed of merely by ruling out this particular writ. § 2255 itself requires the court to "determine the issues and make findings". In an appropriate case it may "correct the sentence". I think that inherent in this power is the power to require and secure the presence of the prisoner, where necessary.

This sort of thing has been arranged with the greatest of ease since long before any one ever thought of § 2255. Even before the adoption of Rule 35 it has been held that "The court may correct an illegal sentence at any time". De Benque v. United States, 66 App.D.C. 36, 85 F.2d 202, 106 A.L.R. 839, cited in Bozza v. United States, 330 U.S. 160, 67 S.Ct. 645, 91 L.Ed. 818. Surely my associates would not suggest that in a case where sentence must be reimposed, there is no means of doing so if the prisoner happens to be confined at a distance. The present case involves no different problem. It is answered by the fact that in a § 2255 proceeding the court has jurisdiction both of the moving party and of the United States which holds him prisoner. Its order for his presence poses no problem. It is unnecessary to call the order by any particular name, or to denominate it a writ as was done to bring Walter McDonald from Alcatraz to Michigan for resentence, McDonald v. Moinet, 6 Cir., 139 F.2d 939; or to rely on Title 28, § 1651, referring to the power to issue "all writs necessary or appropriate", etc., or to call upon any doctrine of "a writ in the nature of habeas corpus", Price v. Johnston, 334 U.S. 266, 283, 68 S.Ct. 1049, 1059, 92 L.Ed. 1356. It is simply a matter of common sense that a court required to do a job may make the necessary orders to accomplish it. I think this is implied in Barrett v. Hunter,

---

1. The issuance of a writ of habeas corpus ad testificandum was an inherent power of a court long before the enactment of § 2241(c) (5) of Title 28. Its reach should be coterminous with that of the court's subpoena. I think that Bruno v. United States, D.C.Cir., 180 F.2d 393, is no authority that a subpoena for a wit- ness for the hearing below would not be issued under Criminal Procedure Rule 17(e).

If the Government needed as a witness in a prosecution at Los Angeles a prisoner at Alcatraz, I would think his presence could be procured.

475

10 Cir., 180 F.2d 510, 514, certiorari denied 340 U.S. 897, 71 S.Ct. 234.

Not a single proposition in any of the opinions filed was urged by either party. Upon them the United States Attorney has had no opportunity to be heard. Until we have granted such a hearing I think we have not done our best to solve this case, as we should do before we throw up our hands and ask the Supreme Court to grant certiorari, as the majority now do.

The idea behind § 2255 has merit. It was drafted after much study of a problem that needed attention. Its sensible procedure should be compared with the Mountain-to-Mahomet procedure of bringing the testimony of a Michigan judge, and other Michigan witnesses to California in response to Walter McDonald's latest habeas corpus petition. Swope v. McDonald, 9 Cir., 173 F.2d 852, certiorari denied 337 U.S.960, 69 S.Ct. 1522, 93 L.Ed. 1759.

If there be infirmities in § 2255, I think it a matter of considerable importance whether they be of the character and extent stated in Judge Stephens' opinion or whether they be of the character and extent stated in Judge Denman's first opinion. If the latter is the true situation, the objections raised can readily be corrected by a simple amendment, and I think that this court ought not to say that all the labor that has been expended upon the drafting of § 2255 must be committed to the ashcan without more thorough opportunity for argument before the court than has yet been afforded.