## HAYMAN v. UNITED STATES.

### No. 13488.

United States Court of Appeals
Ninth Circuit.

June 12, 1953.

As Amended Sept. 1, 1953.

Writ of Certiorari Denied Oct. 19, 1953.

See 74 S.Ct. 77.

Crispus A. Wright, Los Angeles, Cal., for appellant.

Walter S. Binns, U. S. Atty., Ray H. Kinnison and James K. Mitsumori, Asst. U. S. Atty., Los Angeles, Cal., for appellee.

Before STEPHENS and POPE, Circuit Judges, and McCORMICK, District Judge.

1. This case has an extensive history of more than usual importance. On the twentieth day of November, 1946, a true bill was found and returned to the United States District Court in and for the Southern District of California, Central Division, Case No. 19036, by which Herman Hayman was indicted in:

Count One, Title 18 U.S.C. § 78, [now 914] of impersonating Samuel T. Thompson and under color of such false impersonation, receiving money due to the said Thompson by the Government of the United States. The money so received in the sum of $100 was evidenced by a check of and issued by the Treasurer of the United States.

Count Two, Title 18 U.S.C. § 73 [now 495] of forging and falsely procuring the endorsement of the payee of the check referred to in Count One.

Count Three, Title 18 U.S.C. § 73, of uttering and causing to be uttered as true the falsely endorsed check referred to in Count One.

Count Four, Title 18 U.S.C. § 73, of making and procuring the false and forged endorsement of the payee, Charles A. Wilbun, on a United States Treasury check in the sum of $282.50.

Count Five, Title 18 U.S.C. § 73, of uttering and causing to be uttered as true the falsely endorsed check referred to in Count Four.

Count Six, Title 18 U.S.C. § 88, [now 371] for conspiring with others to illegally obtain the checks referred to in the other counts and to cause them to be falsely endorsed and uttered and to obtain the money for which the checks were drawn. Three overt acts are alleged as follows:

"(1) On or about March 6, 1946, at Los Angeles, California, defendant Herman Hayman accompanied co-conspirator Dorothy McClain to the Goodwin Shoe Store;

"(2) On or about March 6, 1946, at Los Angeles, California, co-conspirator Dorothy McClain forged the payee's name: Charles A. Wilbun, on the United States Treasury check described above in this count;

"(3) On or about March 6, 1946, at Los Angeles, California, co-conspirator Dorothy McClain presented for payment to the Goodwin Shoe Store the United States Treasury check described above in this count."

The plea was not guilty, a jury was waived, evidence was introduced and appellant (defendant) was found guilty on each count; a so-called probation report was made showing a prior offense and sentence was pronounced. Upon appeal to this court the judgment was affirmed. Hayman v. United States, 9 Cir., 1947, 163 F.2d 1018.

Thereafter appellant sought relief under Title 28 U.S.C.A. § 2255. Hearing was had without appellant's presence, relief was denied, and upon appeal we reversed and ordered the motion under § 2255 dismissed. Hayman v. United States, 9 Cir., 1950, 187 F.2d 456, 458 [as amended 1951]. In our opinion Judge Denman was of the view that § 2255 was " 'inadequate or ineffective' " to test the legality of this movant's detention, since there appeared to be no power of the court to bring the petitioner before it. Judge Stephens, concurring in the reversal, thought the whole section [§ 2255] unconstitutional as it acted to suspend the United States Constitution as to the writ of habeas corpus. Upon petition for rehearing, Judge Denman agreed that the section offended against the Constitution. Judge Pope dissented and voted to affirm. The United States Supreme Court issued its writ of certiorari and in its opinion, United States v. Hayman, 1952, 342 U.S. 205, 72 S.Ct. 263, 96 L.Ed. 232, held that the section was adequate and effective since the movant could be brought into court by court order; held, as Judge Pope had held, that the constitutional question suggested by Judge Stephens was not properly before the court and ordered the motion reheard with appellant present.

The motion was reheard in the same court but before another judge, with appellant present. The motion was dismissed and appellant appealed to this court, which is the instant case before us, No. 13,488.

STEPHENS, Circuit Judge.

We are here dealing with an additional phase of the "Hayman" case of many vicissitudes.[1]

Hayman is appealing from an order of the United States District Court denying his motion made pursuant to Title 28 U.S. C.A. § 2255.

Heretofore, appellant was tried in the above entitled court to Honorable William Mathes, Judge presiding (a jury having been waived), upon six counts of an indictment and he was found guilty as to all counts. Each of the charged offenses related to the theft of United States Treasury checks. Attorney A. P. Entenza, appellant's employed counsel, appeared and conducted appellant's defense throughout the trial.

At the trial there was testimony by Mrs. Juanita Jackson and Miss Dorothy McClain that appellant, sometimes in company with one or the other or both of them, would drive his automobile to or near residences, and at appellant's direction one of the women would go to the residential mail boxes and extract therefrom United States mail consisting of brown government envelopes containing government pay checks drawn to others than the three. The checks would be endorsed by appellant or one of his companions by the forging on each check of the payee's name. The checks would be cashed at various retail stores and appellant would give the women part of the money and keep the rest. Two of the checks which had been obtained in the manner related were introduced into evidence and the named payees testified that their signatures had been forged. A storekeeper who had cashed one of the checks in evidence identified appellant as the person for whom he had cashed it. Another storekeeper, a shoe salesman, testified that he cashed the other check in evidence after Miss McClain in company with appellant and another man had endorsed it and had given it to him in payment for three pairs of shoes fitted to appellant. The salesman identified a pair of shoes, as one of the pairs delivered to appellant, and an officer testified that appellant was wearing the shoes when arrested. Both Mrs. Jackson and Miss McClain testified for the government involving appellant and themselves. A young man acquaintance of appellant's testified that he had forged payees' names on many checks at appellant's request. Appellant took the witness stand and denied all wrongdoing.

Mrs. Juanita Jackson was separately indicted for offenses relating to her practices as set out above. She was arrested in Denver and was brought back to Los Angeles where she was confined in jail. Mr. Entenza was employed to defend her and appeared at her arraignment before a judge other than the judge before whom appellant's case was pending. She was not pleased with Entenza as counsel and announced that she was pleading guilty, that she "knew what she was doing". The court accepted her plea and postponed the pronouncement of sentence. On the record, Entenza was her counsel and moved that one count in the indictment be dismissed, but the facts show plainly that Mrs. Jackson was acting on her own advice.

Appellant's trial before Judge Mathes came on a few days after Mrs. Jackson's plea in her case, and at the outset the officiating deputy district attorney announced that Mrs. Jackson would be a witness for the government, and she thereafter testified as we have already stated. Mr. Entenza cross-examined her extensively and in detail.

After appellant's conviction and after a report by the probation officer which showed a former conviction, appellant was sentenced as of January 20, 1947. On May 11, 1949, appellant filed his motion under Title 28 U.S.C.A. § 2255. Amendments were made thereto June 8, 1949, and March 31, 1952. The motion was heard and denied by Judge Mathes without the presence of and without notice to appellant and, thereafter, proceedings were had in this court and in the United States Supreme Court resulting in the motion being sent back for hearing with appellant's (movant's) presence. The motion was reheard and again denied, Honorable Harry C. Westover, Judge presiding. The appeal now being considered is from Judge Westover's order.

■ The basis for the appeal is that appellant was deprived of the effective services of an attorney in his trial (a violation of the Sixth Amendment to the United States Constitution) because his counsel at his trial, Mr. Entenza, was also counsel for

Mrs. Jackson, and there was conflict of interest between appellant and Mrs. Jackson.

In his motion appellant alleged that he and Mrs. Jackson were co-defendants, but this is not true. While his motion is somewhat indefinite as to his grounds for relief, we take it that he is contending that the conflict of interest was sufficient in itself to support a holding that he was without the effective aid of an attorney and that his specific complaint, which we shall presently notice, is by way of illustration. The specific complaint is that, while Mrs. Jackson was testifying, she was, in fact, a convicted felon and that Mr. Entenza did not ask her as to that fact. It is argued that had he put the question the answer would have been in the affirmative and the judge would then have had reason to doubt her testimony. Neither at the trial nor afterwards through his direct appeal under different counsel did appellant ever claim that his defense had been prejudiced by Mr. Entenza's attorney-relations with Mrs. Jackson. It is not unlikely that the idea was hatched in the fertile brain of one of appellant's associates in prison. See United States ex rel. Mitchell v. Thompson, D.C. 1944, 56 F.Supp. 683. Be that as it may, we look to the facts to see whether anything was done or whether there was any omission to do anything other than that which a competent and free-to-act lawyer would be justified in doing or not doing.

The cross-examination of Mrs. Jackson was thorough. Mr. Entenza knew appellant's situation and, too, Mrs. Jackson's situation. He was in a position to know what best to do. He, as a capable and experienced lawyer, knew that conviction of appellant would certainly result if the court believed Mrs. Jackson. She had been brought into court from jail and she told her story without protecting herself in the slightest. By her own sworn testimony the listening, experienced judge was informed that she had committed felonies. In these circumstances, the argument that the court's knowledge of conviction would have depreciated the credence he gave her testimony is too tenuous for serious consideration. If it may be believed that the credibility of her story would be affected by her stating, "Yes, I have been convicted of a felony", it may also be believed that the judge in these circumstances, since she was in custody, would naturally have thought, "Yes, of course, she has been found guilty of the very crimes she has just confessed to on the stand, crimes in which the defendant here on trial was also involved."

It is fair and usual trial tactics to refrain from asking an adverse witness a question which would bring an answer that might well "cut both ways". But any way one may regard the possible effect of the question which was never asked and never answered, it shrinks into nothing for another reason: Before the court sentenced appellant, the probation report informed the judge that Mrs. Jackson had been convicted for offenses involving appellant. Had the court then and not before considered her testimony with caution, it was not too late for him and it would have been his duty to readjust his appraisal of all the testimony, and if the new appraisal left the proof insufficient for conviction, to declare the defendant not guilty.

The fact that Entenza did not ask Mrs. Jackson if she had been convicted of a felony does not show that appellant's attorney was remiss in his duty toward his client. And it does not tend to show that appellant was without the effective assistance of counsel.

But, whatever may be made out of the point just discussed, or of the point that there was conflict in the interests of Mr. Entenza's clients, appellant is not helped. Appellant and Mrs. Jackson knew each other in school and afterwards, and during the period in suit they associated together as well-acquainted friends. Appellant got into trouble and employed Entenza. Mrs. Jackson's mother, Mrs. Harton, went to Entenza's office and in the presence of appellant employed Entenza to represent her daughter. She testified in part: "I went to the office of Entenza with Herman Hayman * * * Juanita wasn't there * * * Mr. Entenza had been my attorney, and when Mr. Hayman phoned me to get him an attorney I took him there to represent—he said he wanted Mr. Entenza to represent him, also Justine's mother. On several occasions when I had talked with Mr. Entenza, Herman was

there and he knew that, talked about Entenza was representing Juanita, Justine, as well as himself." [Sic.]

Mr. Entenza testified that the district attorney's announcement that Mrs. Jackson would testify for the government was a great disappointment to him and to appellant. It was not a complete surprise, however, as appellant and Entenza had discussed the possibility of that turn of affairs. Mr. Entenza had expressed to appellant his serious doubts and appellant had expressed himself as believing that Mrs. Jackson would not take the stand against him. They went into court in full knowledge of the danger and in full knowledge of Entenza's attorney-relations with both appellant and Mrs. Jackson.

The transcript of the evidence in the trial which resulted in appellant's conviction shows a very strong case of his guilt built upon coordinating testimony amounting almost to demonstration and it reveals no slightest indication that this attorney did not in fact adequately and ably defend him. If it can be spelled out from the evidence that an actual conflict of interest existed, it was not such conflict that would be at all likely to endanger appellant's defense. But even so, the record shows complete knowledge and consent on the part of appellant, both as to the attorney-employment by Mrs. Jackson and as to the likelihood of Mrs. Jackson's adverse testimony. We think the record shows on its face that appellant was not without effective counsel, but in fact, that he was adequately defended by his attorney; that, in fact, there was no adverse interest in the case which deprived or tended to deprive appellant of an adequate defense.

We are pleased to here acknowledge the efficient presentation of appellant's case by Mr. Crispus Wright who took his court appointment seriously and performed his duties faithfully.

We advert briefly in the margin to the cited authorities.[2]

Affirmed.

---

2. Aetna Ins. Co. v. Kennedy, to Use of Bogash, 301 U.S. 389, 57 S.Ct. 809, 81 L.Ed. 1177: Jury may be waived but courts indulge every reasonable presumption against waiver of trial by jury. The point is not involved.

Patton v. United States, 281 U.S. 276, 50 S.Ct. 253, 74 L.Ed. 854; De Jordan v. Hunter, 10 Cir., 145 F.2d 287; Right of counsel may be waived.

Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461: " * * * [W]aiver of the right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused."

Jones v. Huff, 80 U.S.App.D.C. 254, 152 F.2d 14, 15: Reaffirming the holding in Diggs v. Welch, 80 U.S.App.D.C. 5, 148 F.2d 667, and Strong v. Huff, 80 U.S.App. D.C. 89, 148 F.2d 692, that to nullify a conviction by habeas corpus '[i]t must be shown that the proceedings were a farce and a mockery of justice' [80 U.S.App. D.C. 5, 148 F.2d 669].

McFarland v. United States, 80 U.S. App.D.C. 196, 150 F.2d 593, 594: Holding the prosecutor subject to condemnation, but conduct did not deprive the appellant of a fair trial " * * * for the evidence of appellant's guilt was so conclusive that no honest and intelligent jury could have failed to convict".

There is, however, conclusive authority to the effect that a conviction cannot be sustained as to one who has been denied a constitutional right though the proof of guilt is strong. See Ex parte Nielsen, 131 U.S. 176, 9 S.Ct. 672, 33 L.Ed. 118; Bollenbach v. United States, 326 U.S. 607, 66 S.Ct. 402, 90 L.Ed. 350; Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158.

United States v. Wight, 2 Cir., 176 F. 2d 376, 379: "A lack of effective assistance of counsel must be of such a kind as to shock the conscience of the Court and make the proceedings a farce and mockery of justice."

Schiffman v. Hunter, 10 Cir., 145 F.2d 288: A number of defendants were being tried together and there were several lawyers representing separate defendants. In the trial, one lawyer was selected to lead the defense. After trial and conviction, Schiffman claimed he was not represented by a lawyer of his own choice and complained of the services of the lawyer selected to lead. The order of the district court discharging the writ of habeas corpus was affirmed.

Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680: A co-defendant did not consent to appointment of counsel who was also counsel for a co-defendant whose interests were adverse.