**Harry Morris SHERMAN, Appellant,**

v.

**UNITED STATES of America,**
**Appellee**

**No. 14977.**

United States Court of Appeals
Ninth Circuit.

Jan. 22, 1957.

Rehearing Denied March 8, 1957.

**330**

Morris Lavine, Los Angeles, Cal., for appellant.

Laughlin E. Waters, U. S. Atty., Louis Lee Abbot, Thomas H. Ludlow, Jr., Asst. U. S. Attys., Los Angeles, Cal., for appellee.

Before STEPHENS and ORR, Circuit Judges, and ROSS, District Judge.

ROSS, District Judge.

Appellant, Harry M. Sherman, was tried and convicted in the District Court of the Southern District of California, Central Division, on an indictment charging three violations of 21 U.S.C.A. § 174 (narcotics). He appeals from these convictions.

A brief summary of the factual background is necessary and the evidence is briefly summarized as follows: The defendant, Sherman, once a known dealer in narcotics, and prior to his arrest in connection with the instant offenses a suspect, was convicted on three counts of violation of the narcotic laws. At the time our story begins, around April 1, 1953, Sherman was operating a barber shop in Los Angeles. One Fred Door, a special employee and informant, prior to April 1, 1953, had informed the narcotic agents that Sherman was in the narcotic traffic. On the basis of this background and information the narcotic agents on April 1, 1953, began an investigation that ultimately led to the arrest of Sherman, his indictment, and his conviction on the three counts.

On April 1, 1953, a government agent, Ralph M. Farias, known as Eddie, was introduced to Sherman at his barber shop by a special employee, one Fred Door. Sherman, of course, had no knowledge of Door's employment by the Narcotic Service. At the time of this first meeting Sherman and Door reminisced about old times in New York, and discussed mutual acquaintances there in the narcotic racket. The testimony of the agent Farias was that on this first visit "Sherman at that time stated he was in the narcotic traffic * * * that he was willing to take anyone to New York to establish a connection. * * * That if I was interested he would take us to New York for the purpose of purchasing in kilo lots * * * that is, in possible 16 ounces or 32 ounces of heroin approximately $300 or $400."

With this auspicious beginning Agent Farias, with other confederates and shills, began to occasionally drop around

to Sherman's barber shop. Between April, 1953, and July, 1954, the date of Sherman's arrest, from ten to fifteen contacts had been made between the agent Farias and Sherman. During the investigation Farias was called out of town on another job and the Sherman matter languished for a month or so. The threads of the investigation were picked up again on July 9, 1954, and events began to move.

On that date Agent Farias called at Sherman's new shop, at which time Sherman told the Agent that he could get two ounces of virgin heroin for him. Without going into details Sherman, at the Agent's request, gave him a sample to test prior to the purchase of the two ounces.

This sample was the basis of Count One of the indictment, which alleged that "on or about July 9, 1954, Harry Morris Sherman and one Annabella Ellison, after importation, did knowingly and unlawfully receive, conceal, and facilitate the transportation of a certain narcotic drug, namely: approximately 6 grains of heroin * * *"

On July 10, 1954, Farias contacted Sherman, advised him the sample was approved, and that he was ready to pay for and take delivery of the two ounces of heroin bargained for at $600. The money and the heroin then changed hands. This was the basis of the second count of the indictment charging a sale.

The agent then began to dicker with Sherman for a second purchase of from 16 to 32 ounces at from $400 to $600 per ounce. The routine of the first sale was followed. Farias requested and was given a sample, then offered to purchase 16 ounces. This sale "hung fire" because the agent insisted on delivery before he paid over. Sherman demurred. At this point the agents decided to, and did, arrest Sherman and Ellison. The delivery of the second sample was the offense charged in the third count of the indictment.

Sherman's appeal was in propria persona, and no specification of errors appears in the record. In his brief we find the following headings and we take it that these he intended as his specification of errors:

(A) "The defense of entrapment comes in under a plea of not guilty."

(B) "Decoys are not permissible to ensnare the innocent."

(C) "There is no federal statute authorizing consecutive sentences."

(D) "The jury was influenced by the prosecuting attorney."

(E) Trial on counts charging same offense. Double jeopardy.

(F) "Due process denial of counsel time to confer * * * The assistance of counsel means effective assistance."

(G) "Rule 44 Federal Rules of Criminal Procedure [18 U.S.C.A.] provides: Right of Defendant to Counsel."

(H) "Enacted: Amendment of Section 174, Title 21. Since 1951 is an unconstitutional error due to the fact double jeopardy is involved its making the Federal law retroactive."

(I) "Mandatory—Enactment of Boggs Law * * * Boggs Act is definitely unconstitutional."

Where we have used Sherman's exact wording same are indicated by quotes, where we assumed his meaning quotes omitted.

Fortunately, during the course of the appeal, Sherman obtained counsel and on October 2, 1956, appellant's supplemental brief was filed, citing the points on appeal as follows:

I. The appellant was illegally sentenced in the above entitled case. The appellant could not be sentenced to more than one period of either five years or ten years under Section 2557(b) (1) of the Internal Revenue Code, 21 U.S.C.A. § 174, 26 U.S.C. § 2557(b) (1), Public Laws 225, 82 Congress, First Session.

II. The court could not split the offense into three offenses, only one offense was committed.

III. The defendant was denied due process of law guaranteed by the Fifth and Sixth Amendments to the Constitu-

tion of the United States in that he was denied the effective aid of counsel of his choice.

The government, of course, takes the position that appellant was properly and lawfully tried and sentenced, and that there is no merit in any of the points raised.

Before proceeding to a discussion of the law points involved it may be pointed out that following the argument on appeal, at which time there was considerable discussion of the Boggs Act, the government filed a supplemental brief followed by a second supplemental brief on behalf of appellant.

It is noted that appellant's counsel makes no mention of entrapment in his brief (first supplemental), nor is it included in his three points on appeal.

 Appellant devoted considerable of his original brief to the subject of entrapment. He begins: "I was lured by a Federal agent." The question presented here is whether the agents overstepped themselves in their efforts to secure sufficient evidence against Sherman to indict and then convict him. It is common knowledge that in crime detection working under cover is an accepted procedure, and, in some instances almost the only way in which law enforcement officers can proceed. The suppression of the narcotic trade is a familiar field for the use of this sort of investigative procedure. On the matter of entrapment it is said in Newman v. United States, 4 Cir., 299 F. 128, 131:

> "It is well settled that decoys may be used to entrap criminals, and to present opportunity to one intending or willing to commit crime. But decoys are not permissible to ensnare the innocent and lawabiding into the commission of crime. When the criminal design originates, not with the accused, but is conceived in the mind of the government officers, and the accused is by persuasion, deceitful representation, or inducement lured into the commission of a criminal act, the government is estopped by sound public policy from prosecution therefor."

Appellant has asserted entrapment as a defense to the charges made against him in the indictment, but the record lends no support to his contentions in this respect. On the first meeting with the agent there was a free discussion on the part of Sherman, and the special employee who accompanied the agent, of mutual friends in the narcotics racket in New York, and on the next day Sherman offered to take the agent to New York to make the proper contacts. The most that can be said is that the stratagem employed here by the government agents was merely to pose as persons interested in buying narcotics. The record is convincing that Sherman needed no special urging to make the sales. The criminal design was at all times in the mind of Sherman, and no persuasion was used other than such as the offers to buy would themselves be persuasive. As said in United States v. Becker, 2 Cir., 62 F.2d 1007, the accused had already formed the design to commit the crime, or similar crimes; he was merely awaiting the opportunity; and his willingness to commit the crimes was evidenced by his willingness to make the sales.

This Circuit, in Trice v. United States, 211 F.2d 513, 516, held:

> "The question is: Is it illegal entrapment and the answer to that question is to be found in the testimony of the narcotic agents on whether they had reasonable grounds to believe that Trice was predisposed to engage in the illicit traffic."

The record indicates that Sherman was indicted on charges of narcotic violations in 1947; entered pleas of guilty to two counts; that he had served time; had taken the "cure" at a federal institution; that his former associates were narcotic law violators; that it was reported to the agents prior to initiating the investigation that he was still

in the business. Certainly this was more than sufficient to lead the agents to believe that Sherman was "predisposed" to deal in narcotics.

In Sorrells v. United States, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413, and United States v. Brandenburg, 3 Cir., 162 F.2d 980, it is said that the question of entrapment is one for the jury. Here the matter was submitted to the jury with proper instructions. The jury found no entrapment, and there is ample evidence in the record to support that finding.

■ Since the evidence was conflicting on the subject of entrapment the question was properly submitted to the jury. Stillman v. United States, 9 Cir., 177 F.2d 607, 616; Hemphill v. United States, 9 Cir., 120 F.2d 115, certiorari denied 314 U.S. 627, 62 S.Ct. 111, 86 L.Ed. 503; Henderson v. United States, 9 Cir., 143 F.2d 681.

Other cases on this subject are Sorrells v. United States, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413; Partan v. United States, 9 Cir., 261 F. 515; C. M. Spring Drug Co. v. United States, 8 Cir., 12 F.2d 852; Price v. United States, 165 U.S. 311, 17 S.Ct. 366, 41 L.Ed. 727; Andrews v. United States, 162 U.S. 420, 16 S.Ct. 798, 40 L.Ed. 1023; Grimm v. United States, 156 U.S. 604, 15 S. Ct. 470, 39 L.Ed. 550; Swallum v. United States, 8 Cir., 39 F.2d 390; United States v. Ginsburg, 9 Cir., 96 F. 2d 882; United States v. Singleton, D. C., 110 F.Supp. 634; Yep v. United States, 10 Cir., 83 F.2d 41; Lutfy v. United States, 9 Cir., 198 F.2d 760, 33 A.L.R.2d 879; United States v. Pisano, 7 Cir., 193 F.2d 355, 31 A.L.R.2d 409; Rucker v. United States, 92 U.S.App. D.C. 336, 206 F.2d 464.

■ A verdict supported by sufficient evidence is binding on a reviewing court. Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680:

"It is not for us to weigh the evidence or to determine the credibility of witnesses. The verdict of a jury must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it."

Also Abrams v. United States, 250 U.S. 616, 619, 40 S.Ct. 17, 63 L.Ed. 1173.

It appears that the remainder of the points raised by Sherman in his brief are covered by the first supplemental brief filed on his behalf by counsel. We will now take these in order.

### I.

"Appellant was illegally sentenced * * * could not be sentenced to more than one period of either five years or ten years under Section 2557(b) (1) of the Internal Revenue Code."

Section 174 in its present form was adopted in 1951. It provides in the first instance that any person who

" * * * fraudulently or knowingly imports or brings any narcotic drug into the United States * * * contrary to law, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale * * * or conspires to commit any of such acts * * * shall be fined not more than $2,000 and imprisoned not less than two or more than five years. For a second offense * * * not more than $2,000 and imprisoned not less than five or more than ten years. For a third or subsequent offense * * * fined not more than $2,000 and imprisoned not less than ten or more than twenty years. * * * After conviction, but prior to pronouncement of sentence, the court shall be advised by the United States attorney whether the conviction is the offender's first or a subsequent offense. If it is not a first offense, the United States attorney shall file an information setting forth the prior convictions. The offender shall have the opportunity in open court to affirm or deny that he is identical with the person previously convicted. If he denies the identity, sentence shall be postponed

for such time as to permit a trial before a jury on the sole issue of the offender's identity with the person previously convicted * .* *."

Appellant's counsel points out that Section 174, Title 21, U.S.C.A., provides that where the defendant is to be sentenced as a second or third offender an information must be filed subsequent to conviction but prior to sentence, which must allege the commission of the prior convictions of the defendant. This procedure, it is urged, violates the Fifth Amendment of the Constitution of the United States, which requires an indictment or presentment.

Appellant then argues that "where there is a solicitation as here * * * if the court holds there is not entrapment as a matter of law, there is but one transaction and one offense and not as many offenses as the narcotic agents would seek to induce. The offense is single and not multiple. Other than this statement no argument or citation of authority is given. Perhaps it is assumed that his following points, arguments and citations are sufficient. See comment under II(b)—Boggs Act.

### II(a).

"The court could not split the offense into three offenses * * * only one offense was committed."

■ In the face of much authority appellant contends that on the facts of this case the three acts consisting of the delivery of two samples and one sale come under the so-called "single transaction" rule. People v. Stevens, 79 Cal. 428, 21 P. 856, 4 L.R.A. 845, is cited. In this case the defendant had published a libelous article against one person in one issue of a paper; was tried and acquitted. A second prosecution was initiated on the basis of same article in the same publication, all directed at the same person, but consisting of a different statement out of the article than that used in the first prosecution. The only question presented was whether the second prosecution was for the same offense as the first. The only difference was that the words alleged to be defamatory were different. Regina v. Elrington, 9 Cox, Crim.Cas. 86, is cited, for the proposition:

"It is a fundamental rule of law that out of the same facts a series of charges will not be preferred."

With this elementary statement we are all in agreement, but Elrington is, in our opinion, a more potent argument against appellant than for him. He has attempted to make "one transaction" of the three offenses, which has support neither in law nor common sense. It is true that each of the three offenses were part of a general plan but each had its separate genesis and separate train of events leading to culmination. Without further comment on the cases cited by appellant in support of his single transaction theory we point out that the law is well established, that even if there be any substance to the single transaction rule it does not apply in the federal courts.

■ The court in Reynolds v. United States, 6 Cir., 280 F. 1, 2, commented on the so-called "single transaction" rule as follows:

"The sole contention of plaintiff in error made here (although stated in two forms) is that she has been twice punished for a single offense, invoking in support of that contention divers holdings of state courts under what is called the 'same transaction' rule. This broad rule * * * does not prevail in the courts of the United States, wherein it is well settled that it is competent for Congress to create separate and distinct offenses growing out of the same transaction."

See Gavieres v. United States, 220 U.S. 338, 31 S.Ct. 421, 55 L.Ed. 489; Morey v. Commonwealth, 108 Mass. 433; Pereira v. United States, 347 U.S. 1, 74 S. Ct. 358, 98 L.Ed. 435; Matthews v. Swope, 9 Cir., 111 F.2d 697.

## II(b).

Under his discussion of Point II(b), appellant's counsel states: That portion of the Boggs Act which permits the District Attorney to file an information and to increase the punishment of the defendant is unconstitutional and in violation of the Fifth Amendment of the Constitution of the United States.

Appellant makes the assumption that the filing of the information required by Section (Boggs Act) 174 to permit an increased sentence amounts to charging defendant with another and separate offense; that the Fifth Amendment prohibits any person from being held to answer for a capital or otherwise infamous crime, unless on presentment or indictment. Appellant's first error is in springboarding from a false assumption. The information required to be filed does not charge another crime or offense, either felony or misdemeanor. The defendant has in each instance been previously charged with and convicted of the prior offense or offenses referred to in the information. There is no attempt to retry him on them, he is not arraigned and required to enter his plea. The purpose of the information after trial and conviction is merely to advise the Court as to whether or not defendant is a second or third offender. There is no issue of criminality involved, only the matter of identity. If he denies that he is entitled to a jury trial on that sole issue. The matter of the former offense is not relitigated. The allegations of the information, and proof on trial of question of identity, goes solely to the question of punishment. This is a means of carrying the theory of the habitual statutes into effect through a statutory provision much more solicitous of the defendant than the ordinary method of bringing the matter squarely before the jury at time of trial. The constitutionality of the Boggs Act (Section 174, Title 21, U.S.C.A.) has been passed upon by the courts. In Pettway v. United States, 6 Cir., 216 F.2d 106, 108, the Court stated:

"Appellant's contention that the statute hereinabove referred to as the Boggs Act is ex post facto *litigation* [legislation?] and unconstitutional is without merit. The statute was in effect prior to May 29, 1952, the date of the offenses charged in the indictment. The information, setting out the two prior convictions, did not charge the appellant with any crime. It merely alleged facts, which, if established, went solely to the question of punishment. Beland v. United States, 5 Cir., 128 F.2d 795; McDonald v. Commonwealth of Massachusetts, 180 U.S. 311, 21 S.Ct. 389, 45 L.Ed. 542; Moore v. State of Missouri, 159 U.S. 673, 16 S.Ct. 179, 40 L.Ed. 301; Graham v. State of West Virginia, 224 U.S. 616, 32 S.Ct. 583, 56 L.Ed. 917."

In Beland v. United States, 5 Cir., 128 F.2d 795, 796, the court said:

"The appellant attacks the constitutionality of the invoked section on the ground that his previous convictions were alleged and set forth in an information and not in an indictment, and that such method of procedure was violative of the Fifth Amendment to the Constitution, that 'No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury.' An indictment is confined to the question of whether an offense has been committed; it charges the commission of a crime. * * * It [information] did not charge a crime; it merely alleged facts which, if established by admission of the defendant or by proof before a jury, went only to the question of punishment. * * * the question presented by the information was simply whether he had been convicted of a violation of the narcotic laws on two previous occasions. * * * The identification of the defendant with the two previous convictions was all that was sought, and there was no

occasion for an indictment. The procedure was not violative of the Fifth Amendment. Graham v. State of West Virginia, 224 U.S. 616, 32 S.Ct. 583, 56 L.Ed. 917."

See also United States v. Taylor, D.C., 123 F.Supp. 920.

### III.

The defendant was denied due process of law guaranteed by the Fifth and Sixth Amendments to the Constitution of the United States in that he was denied effective aid of counsel of his choice.

 The position is taken by appellant that he was inadequately represented by counsel appointed by the Court. However, it has been many times held that hindsight is not the proper measure for determining this question, and it has as often been held that the Constitution does not guarantee that counsel appointed for, or employed by, a defendant shall measure up to his notions of ability or competency. It is said in Losieau v. United States, 8 Cir., 177 F.2d 919, that it is enough that the trial court appointed a qualified attorney to represent petitioner, and that the attorney appeared, advised with, and represented him.

A full examination of the record here indicates that there is no merit to this contention of appellant. The court appointed counsel for Sherman was competent, and the record indicates that he did a workmanlike job. In United States ex rel. Feeley v. Ragen, 7 Cir., 166 F.2d 976, the court said that the attorney's mistakes, although indicative of lack of skill, will not vitiate the trial unless on the whole the representation is of such low caliber as to amount to no representation and to reduce the trial to a farce. Judge Denman, speaking for the court in Latimer v. Cranor, 9 Cir., 214 F.2d 926, 929, said:

"The application alleges that Latimer's attorney mishandled his case. This is a frequent contention of unsuccessful defendants. There are no allegations showing the attorney's conduct was so incompetent that it made the case a farce requiring the court to intervene in his client's behalf. We find no denial of the efficient representation of the Constitution."

For other cases on this point see Moss v. Hunter, 10 Cir., 167 F.2d 683; Soulia v. O'Brien, D.C., 94 F.Supp. 764; Merritt v. Hunter, 10 Cir., 170 F.2d 739; United States v. Wight, 2 Cir., 176 F.2d 376, 379; Shepherd v. Hunter, 10 Cir., 163 F.2d 872, 873; Williams v. United States, 4 Cir., 218 F.2d 276; Hayman v. United States, 9 Cir., 205 F.2d 891, 894; United States ex rel. Thompson v. Dye, D.C., 103 F.Supp. 776; Diggs v. Welch, 80 U.S.App.D.C. 5, 148 F.2d 667.

In connection with his point of being denied effective aid of counsel appellant asserts that this was a denial of due process as guaranteed by the Fifth and Sixth Amendments to the Constitution. The Fifth Amendment, the "due process" clause, has not been violated here. The Sixth Amendment requires that the accused shall have the assistance of counsel for his defense. Since we find that appellant has been properly represented he has not been deprived of any of his rights under the Sixth Amendment.

We have now covered the three points raised by appellant's counsel and have disposed of appellant's argument on entrapment. It might be well to comment upon the remaining points, some overlapping, made in appellant's propria persona brief.

*Points A and B.* These two points covering entrapment we have already discussed.

 *Point C.* "There is no federal statute authorizing consecutive sentences." The power to impose consecutive sentences has been discussed in so many cases little good would be accomplished to repeat here. Suffice it to say that the practice long predates Section 3568, U.S. C. 18. The power to impose consecutive sentences is inherent in the court. It has been said that by enacting former Section 709a, et seq. of Title 18, relating to penalties and sentences Congress did

not abolish the long sanctioned practice of imposing consecutive sentences, or sentences to begin in the future. Sentences for separate crimes may be consecutive. Ellerbrake v. King, 8 Cir., 116 F.2d 168; Ellerbrake v. United States, 7 Cir., 134 F.2d 683, certiorari denied 319 U.S. 775, 63 S.Ct. 1435, 87 L.Ed. 1722, rehearing denied 320 U.S. 810, 64 S.Ct. 30, 88 L.Ed. 490; United States v. Sposato, 73 F.2d 186; United States v. Solomon, 2 Cir., 70 F.2d 834; United States v. Wright, D.C., 56 F.Supp. 489; Hayden v. Warden, etc., 9 Cir., 124 F.2d 514.

*Point D.* "The jury was influenced by the prosecuting attorney." There is no merit to this contention. Nothing appears in the record upon which to predicate a charge of prejudicial misconduct on the part of the United States Attorney. See Brown v. United States, 9 Cir., 222 F.2d 293, 298:

"As stated by this court in Iva Ikuko Toguri D'Aquino v. United States, 9 Cir., 1951, 192 F.2d 338, 367,

"'Our system of jurisprudence properly makes it a matter primarily for the discretion of the trial court to determine whether prejudicial misconduct has occurred. An appellate court will not review the exercise of the trial court's discretion in such a matter unless the misconduct and prejudice is so clear that it can be said that the trial judge has been guilty of an abuse of discretion.'"

*Point E.* Appellant's "E" seems to revolve around the proposition that there was only one crime involved, the delivery of the two samples and the one sale being merely parts thereof. It further appears that appellant's position is that by reason of his being sentenced on each of the three counts on which he was found guilty, and thereafter sentences of imprisonment to run consecutively being imposed, he had suffered double jeopardy. See our discussion under "single transaction" rule, II(a).

*Point F.* "Due process—denial of council—time to confer." The record indicates that Mr. Kimber, the court appointed counsel for appellant, had as of September 17, 1954, contacted witnesses and was ready to go to trial. On that same date the government estimated that its case would be presented in a day and a half, and Mr. Kimber said that defendant's case would take two or three days. The trial followed on September 21, 1954, four days later. There is an affidavit by Attorney Kimber, representing appellant, indicating that he would be ready to go to trial on September 21, 1954. It further appears that Kimber was appointed by the court to represent appellant on September 7th. By reason of the foregoing it would appear that there is no merit to appellant's plaint that there was not time to confer.

Appellant had every opportunity to make objections in the lower court as to the manner in which he was represented or misrepresented. His court appointed attorney on September 17th announced that he was ready to go to trial on September 21st. Appellant was present in court with him at that time. Considerable discussion took place between the court, counsel and defendant, and at no time was there any suggestion on appellant's part that his court appointed counsel was not properly performing his services, or that defendant desired further conferences with him. Appellant cannot now be heard here on this point. In Neufield v. United States, 73 App.D.C. 174, 118 F.2d 375, certiorari denied Ruben v. United States, 315 U.S. 798, 62 S.Ct. 580, 86 L.Ed. 1199, the court found against a defendant who asserted that he had been denied proper representation where the court had appointed counsel for defendant on the morning of the day of trial.

*Point G.* That appellant was denied effective assistance of counsel. This is guaranteed by the Sixth Amendment and provided for by Rule 44, F.R. Cr.Proc. Reference is made to our comment under Point F above, and to com-

**338**

ment under the brief of appellant's counsel, Point III. In this connection it appears that appellant, as one of his specifications of error, if we can charitably so designate some of his rather confusing comments, is that the court erred in refusing what he terms "denial of accused of right to consult counsel * * * violated his constitutional right to counsel, and if counsel is not accorded sufficient time to confer with defendant in order to adequately defend him that also constitutes denial of right of counsel." Nowhere in the record does it appear that appellant was deprived of his right to consult his court appointed counsel. We allude again to the statements of his counsel, Kimber, made in open court on September 17th to the effect that he was ready to go to trial on September 21st. If by any chance appellant is referring to trial continuances then the record indicates only one request for a continuance on the part of appellant's counsel, Kimber. In the affidavit supporting that motion Kimber asks that the trial go over from September 14 to September 21. That continuance was granted.

The granting of a continuance is a matter of discretion with the court, and will not be reviewed upon appeal in the absence of abuse. Williams v. United States, 9 Cir., 203 F.2d 85, 86; United States v. Vrilium Products Co., 7 Cir., 185 F.2d 3. In the Williams case the court said:

> "The granting of a continuance is not a matter of right, but is always within the sound discretion of the court. Nor will the court's exercise of its discretion be disturbed unless it is abused to the prejudice of the complaining party."

The record is devoid of any such showing of prejudice to appellant by denial of the motion. The Vrilium court, relying on Isaacs v. United States, 159 U.S. 487, 489, 16 S.Ct. 51, 40 L.Ed. 229, makes a similar holding.

█ *Point H.* "Amendment to Section 174, Title 21, U.S.C.A. of 1951, the so-called Boggs Act, is unconstitutional, for the reason that it imposes double jeopardy, is retroactive, is ex post facto legislation; it is retrospective." This point we have discussed above.

There being no error the judgment appealed from is affirmed.