Ernest Nelson **MURRAY**, and Charlotte
Agnes Murray, Appellants,

v.

**UNITED STATES of America,**
Appellee.

**No. 15613.**

United States Court of Appeals
Ninth Circuit.

Dec. 10, 1957.

Rehearing Denied Feb. 24, 1958.

Paul Magasin, Beverly Hills, Cal., for appellant.

Laughlin E. Waters, U. S. Atty., Lloyd F. Dunn, Bruce A. Bevan, Jr., Asst. U. S. Attys., Los Angeles, Cal., for appellee.

Before CHAMBERS and BARNES, Circuit Judges.

BARNES, Circuit Judge.

This is an appeal by two defendants (Ernest Nelson Murray and Charlotte Agnes Murray) from a jury verdict convicting them on three counts of a five count indictment against them and two co-defendants, Schrier and McCormick. Count I, charged a conspiracy to smuggle into this country from Mexico psittacine birds (18 U.S.C.A. § 371); Count II, charged the smuggling of forty-two of such birds on or about February 1, 1956 (18 U.S.C.A. § 545); Count III, charged the receiving, concealing and transporting of said birds on or about February 1, 1956 (18 U.S.C.A. § 545). Count IV, charging the subsequent act of smuggling seventeen birds on February 16, 1956, and Count V, charging the receipt, concealment and transportation of the same birds on the same date, were dismissed by the trial court on motion of the government. Also dismissed were overt acts four and seven charged in the conspiracy count, both occurring after the court ruled the conspiracy had come to an end at the time of the arrest of co-defendants Schrier and McCormick on February 1, 1956. Schrier pleaded guilty to Counts I, II and III, and testified against the appellants. McCormick was subsequently indicted on a lesser offense, and this charge dismissed.

Appellants base this appeal on three grounds:

I. The invalidity of the indictment.

II. The ruling of the court below admitting testimony "of matters, accounts or declarations" occurring subsequent to the termination of the conspiracy.

III. The refusal of the court to instruct on entrapment.

We find no merit in this appeal. We shall discuss the three grounds claimed for reversal in turn.

I. *The invalidity of the indictment.*

■ Appellants claim the indictment was improper because Title 18 Section 545 [1] refers to "smuggling * * * merchandise" while specific reference prohibiting the importation of psittacine birds is found only in 42 Code of Federal Regulations, § 71.152(b) [2] which must necessarily supersede the general section. In other words,

"Appellants further contend that either, (1) the adoption of the Surgeon General's regulation making 42 U.S.C.A. Sec. 271(a) applicable to the importation of psittacine birds removes the importation of such birds from the operation of the provisions of 18 U.S.C.A., Sec. 545, or, (2) both statutes were applicable to the case at bar; that violation of neither one could be proved without proving violation of the other, and that, in these circumstances, the prosecution must be for commission of and conspiracy to commit the offense carrying the lesser penalty."

1. 18 U.S.C.A. § 545: "Whoever knowingly and willfully, with intent to defraud the United States, smuggles, or clandestinely introduces into the United States any merchandise which should have been invoiced, or makes out or passes, or attempts to pass, through the customhouse any false, forged, or fraudulent invoice, or other document or paper; or Whoever fraudulently or knowingly imports or brings into the United States, any merchandise contrary to law, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of such merchandise after importation, knowing the same to have been imported or brought into the United States contrary to law—Shall be fined not more than $5,000 or imprisoned not more than two years, or both.

"Proof of defendant's possession of such goods, unless explained to the satisfaction of the jury, shall be deemed evidence sufficient to authorize conviction for violation of this section. * * *."

2. 42 Code of Federal Regulations, Section 71.152(b) provides:

"Psittacine birds shall not be brought into the United States for the purpose of sale or trade. Psittacine birds may be brought in only for the purposes and under the conditions prescribed in subparagraphs (1) to (4), inclusive, of this paragraph, and subject to the provisions of Section 71.153."

[Appellant's Opening Brief, page 11.]

This same point has been ruled upon adversely to appellant Ernest Nelson Murray by this Court, after his plea of guilty to a similar charge. Murray v. United States, 9 Cir., 1955, 217 F.2d 583, 585. Cf. also Steiner v. United States, 9 Cir., 1956, 229 F.2d 745; Duke v. United States, 9 Cir., —— F.2d —— (petition for rehearing pending).

We are satisfied to maintain the position we have previously taken on this subject.

II. *The testimony "of matters, accounts, or declarations" occurring subsequent to the termination of the conspiracy.*

Appellants misconstrue (a) the nature of admissions against interest made by a defendant vis a vis the declarations of a co-conspirator and (b) the nature of extra-judicial statements.

Appellants' summary of the evidence assumes that their connection with the activities of Richard Schrier and Frank Leslie McCormick came into existence only after February 1, 1956, the date of Schrier's and McCormick's arrest, and the date the conspiracy was held by the trial court to have terminated. Appellants urge that all they did was buy birds; but this ignores entirely considerable testimony to the contrary.[3]

■ Both the Government and the defendants offered recordings of testimony recorded *subsequently* to the termination of the conspiracy. These were admissible (just as other alleged statements of the defendants were admissible) as admissions against interest; admissible and offered only against the person making the admission, and *not* as statements of one conspirator, admissible against a co-conspirator, made during the course of the conspiracy. The jury was so instructed.[4]

■ Further, appellants urge that "all of Schrier's testimony (and that of his wife) *was given* subsequent to the termination of the alleged conspiracy." That, of course, is the only time *testimony* can be given. Even if recordings of conversations had been made prior to the termination of any conspiracy, and during its course, it would not become *testimony* until offered in evidence at the trial. All testimony at any trial relating to prior statements or acts is given subsequent to any alleged conspiracy. But this alone cannot make it inadmissible! So long as the testimony relates to events occurring prior to termination of the conspiracy, it is fundamental that the testimony of one conspirator is admissible as to the statements of all the conspirators where it relates to communications made during and in the course of the conspiracy. Krulewitch v. United States, 1949, 336 U.S. 440, 69 S.Ct. 716, 93 L.Ed. 790; Fiswick v. United States, 1946, 329 U.S. 211, 67 S.Ct. 224, 91 L.Ed. 196.

What counsel apparently urges is that all testimony of Schrier's (and that of his wife) related to acts and statements

---

3. The testimony of Schrier, Goodrich, Gonzales, and Mrs. Schrier showed that defendants had been in the business of smuggling psittacine birds for years; that they had employed Schrier on a payment-by-trip basis to bring in birds; that Mr. Murray had related a scheme of using pilot automobiles to avoid road blocks set by custom officials; that Mr. Murray had furnished money to buy birds in Mexico; that both before and after February 1, 1956, he had produced the names of bird "suppliers" in Tijuana and had furnished gasoline money for trips there. There was also testimony recounting Murray's trip to Mexico in January, 1956, to make arrangements with Gonzales to obtain $1000 worth of psittacine birds per month; his statements to Gonzales that Schrier would pick up the birds in Mexico; his phone calls to Gonzales; and the six or seven deliveries of birds by the Schriers to the Murrays in January, 1956.

4. "Any statement or admission made by a person after his arrest must be considered as having been made after a criminal conspiracy has been ended and any such statement or admission may be considered by you only in connection with the guilt or innocence of that person." [Tr. p. 268.]

made subsequent to the termination of the alleged conspiracy. If this is what is urged, it simply is not the fact.[5]

III. *The refusal of the court to instruct on entrapment.*

 This point likewise has no merit. Entrapment requires that the enforcement agency plant the idea of the commission of the crime in the mind of the defendant. It has no application to a situation where enforcement officers merely permit a violation to occur in order to get sufficient facts to insure conviction. There is not a scintilla of evidence to indicate the government agency here planted any idea in defendants' minds. There is evidence that the government agents merely went along with the criminal plan of the defendants, and managed to thereby obtain a recording of their plans, through the device of a recording device placed upon an informer. No instruction on entrapment was proper, since there was no factual situation presented to the jury on this issue for its decision and ascertainment. Sherman v. United States, 9 Cir., 1957, 241 F.2d 329; Trice v. United States, 9 Cir., 1954, 211 F.2d 513; Lufty v. United States, 9 Cir., 1952, 198 F.2d 760.

The trial court carefully instructed the jury on the various evidentiary matters before it. He carefully saw that two counts (IV and V) were dismissed, and that two overt acts charged in Count I were dismissed, because of his ruling as to the date of the termination of the conspiracy. His very first instruction to the jury was to disregard any testimony of events occurring after February 1, 1956.[6] We think his instructions were proper and sufficient, and we find no error.

The judgment is affirmed by Circuit Judges CHAMBERS and BARNES, Circuit Judge FEE not participating in the hearing and decision.

5. See Note 3, supra.

6. " * * * I will instruct you that the conspiracy in this case terminated as of February 1. Anything that happened after February 1 had nothing to do with the conspiracy unless it throws some light upon something that happened prior

to February 1. So in the consideration of this case you can disregard the testimony of all the witnesses relative to what happened after February 1, unless what they said or did after February 1 threw some light on what happened prior to February 1." [Tr. p. 244.]